OPINION
O. Herman Dreskin, M.D., appellant, appeals an October 16, 1998 entry of the Franklin County Court of Common Pleas affirming the order of the State Medical Board of Ohio ("the Board"), appellee, revoking appellant's medical license.
On January 10, 1997, the Board notified appellant, who is eighty-one years old, that it proposed to determine whether to take disciplinary action against him regarding his certificate to practice medicine and surgery in Ohio, based upon his inappropriate prescribing of controlled substances and other dangerous drugs to twelve patients, who were identified as "Patients 1-12" for confidentiality purposes. The Board also alleged with regard to Patients 1-12, appellant kept inadequate medical records, failed to utilize diagnostic tests, and failed to consider the side effects or interaction of various medications.
The Board specifically alleged that appellant's acts, conduct, and/or omissions constituted violations of (1) R.C.4731.22(B)(2): failure to use reasonable care in the administration of drugs or failure to employ acceptable scientific methods in the selection of drugs or other modalities for treatment of disease; (2) R.C. 4731.22(B)(6): departure from, or failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances; (3) R.C.4731.22(B)(20): violations or attempting to violate rules promulgated by the Board, to wit: Ohio Adm. Code 4731-11-02(C) and4731-11-02(D), which require a physician to take into account when prescribing a controlled substance its potential for abuse and also require the physician to maintain records indicating when and why a controlled substance was used; and (4) R.C. 4731.22(B)(3): such violation is committed purposely, knowingly, or recklessly. On January 22, 1997, appellant requested a hearing on such allegations.
On June 23-25, 1997, the matter was heard before a Board hearing examiner. Appellant and Donald W. Junglas, M.D., the expert witness for the state, testified at the hearing, and appellant and the Board each presented numerous exhibits. Testimony was elicited from both appellant and Dr. Junglas regarding appellant's treatment and recordkeeping concerning Patients 1-12.
The hearing examiner found that: (1) appellant inappropriately utilized controlled substances and other dangerous drugs in the routine course of his treatment of Patients 1-12; (2) appellant failed to document examinations performed or physical findings made to justify the medications that appellant prescribed or dispensed to Patients 1-12; (3) such prescribing frequently occurred in the absence of diagnostic testing or other methods to evaluate the validity of the patients' complaints, or the nature or severity of the patients' reported pain, illness, or injury; and (4) such prescribing occurred without regard to possible side effects and interaction of the medications. The hearing examiner further found that appellant's acts, conduct, and/or omissions constituted violations of R.C. 4731.22(B)(2), R.C. 4731.22(B)(6), R.C. 4731.22(B)(20) (to wit: Ohio Adm. Code 4731-11-02[C] and4731-11-02[D]), and R.C. 4731.22(B)(3). The hearing examiner concluded that appellant's actions demonstrated a lack of sound medical judgment that was not amenable to remedial measures. The hearing examiner proposed to the Board that appellant's certificate to practice medicine and surgery in the state of Ohio be permanently revoked. On September 10, 1997, the Board voted to permanently revoke appellant's medical license based upon the recommendation of the hearing examiner.
On September 24, 1997, appellant appealed the entry of the Board revoking his medical license to the Franklin County Court of Common Pleas. Appellant argued that the order of the Board was not supported by reliable, probative, and substantial evidence. On September 23, 1998, the Franklin County Court of Common Pleas affirmed the order of the Board revoking appellant's medical license. The court found permanent revocation appropriate because (1) appellant continued to believe that he did not harm the patients in any way and that his treatment of them was appropriate even though he conceded that they were drug dependent as a result of his care; and (2) despite numerous recommendations, warnings, and directives from other consulting physicians, the Department of Health Human Services, and the Board, appellant continued prescribing narcotics as he had, sometimes for a decade or more, making it apparent that he was not going to be told how to treat his patients. The court found overwhelming evidence in the record to support the Board's finding that appellant failed to use sound medical judgment for failing to document why the controlled substances were being prescribed. The court concluded that there was reliable, probative, and substantial evidence that appellant violated the statutes and rules cited by the Board. Appellant appeals the court's judgment.
Although represented by counsel before the Board and before the common pleas court on appeal, for the purposes of his appeal before this court appellant is proceeding pro se. Appellant presents no assignments of error, and, in fact, specifically states as his assignment of error: "none." The brief consists of a table of contents; a page entitled "preface," which includes a letter he received from the investigator for the Board and a complimentary letter from a patient; and a copy of the brief filed in the court below by his former counsel. Appellant does list two "contentions": (1) all twelve patients involved were chronically ill with pain syndromes and nearly all were being compensated by state or federal commissions for such pain syndromes; and (2) appellant was deliberately misled by the state medical board in December 1993. However, neither of the "contentions" are argued specifically in the brief. Appellant has clearly failed to comply with App. R. 12(A)(2) and App. R. 16(A)(2), (3), (4) and (6). However, in the interest of justice we shall review the arguments presented in the brief presented to the court below and the two additional "contentions" put forth by appellant in his brief. Vlahos v. Spina (May 26, 1998), Butler App. No. CA97-02-028, unreported.
In an appeal from a state medical board's order, a reviewing trial court is bound to uphold the order if it is supported by reliable, probative, and substantial evidence, and is in accordance with law. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621; R.C. 119.12. Reliable, probative, and substantial evidence has been defined as follows:
 * * * (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.
Our Place, Inc. v. Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570,571. (Fns. omitted.)
However, an appellate court's review is even more limited than that of the trial court. Pons, at 621. While it is incumbent on the trial court to examine the evidence, the appellate court is to determine only if the trial court abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Id. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the medical board or a trial court. Id.
Instead, the appellate court must affirm the trial court's judgment. Id.
In Pons, the Ohio Supreme Court held:
 Moreover, when reviewing a medical board's order, courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession. The policy reason for this was noted in Arlen v. State (1980), 61 Ohio St.2d 168,173 * * * 399 N.E.2d 1251: "`* * * The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of [people] equipped with the necessary knowledge and experience pertaining to a particular field. * * *'" (Quoting Farrand v. State Med. Bd. [1949], 151 Ohio St. 222, 224, 39 O.O. 41, 42, 85 N.E.2d 113, 114.)
Id. at 621-622. Therefore, absent an abuse of discretion of the trial court, this court must affirm the trial court's judgment.
In appellant's brief, he contends that the order was not supported by reliable, probative, and substantial evidence. However, appellant presents no argument concerning the Board's findings as to his inappropriate prescription of controlled substances to the twelve patients. Rather, appellant's arguments mainly regard the issues of his recordkeeping and the punishment imposed by the Board.
Specifically, appellant first argues that "[a]t best, the state proved that [appellant] is from the `old school' of recordkeeping in that he persistently charted only the bare necessities and walked around with complete patient charts in his head." However, Dr. Junglas testified that appellant's recordkeeping fell far below the standard of care. Dr. Junglas stated specifically that with regard to many patients appellant failed to cite reasons and indications for the prescriptions given. There were also no reasons given for adding additional prescriptions for many patients and no reasons for prescribing multiple medications at the same time, considering the risks of addiction and drug interaction. Further, there were numerous instances with regard to different patients that appellant failed to make any indication in the records to support the continued prescribing of medications over spans of several years. Dr. Junglas also stated that many of the patients' charts failed to note that they were suffering any pain that would require the prescribed medications, and they failed to note the general condition of the patients. Many of the records also failed to reflect notes on the "initial workup," examination, evaluation, diagnosis, and treatment with regard to the prescribing of controlled substances.
In the case of Patient 9, Dr. Junglas said that it was below the minimal standard of care for appellant to not address in the medical records the report of a physician who opined that the patient was being overmedicated with tranquilizers. In the case of Patient 11, appellant received a note from the Ohio Department of Human Services criticizing appellant's prescribing and recordkeeping practices; however, there was no entry in Patient 11's progress notes indicating that appellant had received such letter or that he ever sent a response. Further, Dr. Junglas called appellant's record-keeping "abominable" as to Patient 1, and that the only way to know things about some of the patients besides basic information was from other consultants' notes. He also had trouble interpreting many of appellant's handwritten notes.
Although appellant's testimony illustrated that he had some knowledge of his reasoning for prescribing certain medications, appellant admitted with regard to some patients that his medical records do not reflect his diagnoses. Appellant believes that having the medical records in his head is within the minimum standard of care; however, as the court below pointed out, other physicians and entities will have to rely on his records at some point in the future and will have absolutely no guidance given appellant's substandard recordkeeping. Accordingly, after reviewing the entire record, we find that the trial court did not abuse its discretion in determining that there was reliable, probative, and substantial evidence to support the Board's order finding that appellant had fallen below the minimal standard of care in his recordkeeping practice with regard to these twelve patients.
Appellant next argues that permanently removing him from practice is an example of "overkill" because as he has surrendered his Drug Enforcement Agency ("DEA") registration, the offense of overprescribing controlled substances cannot occur again. Appellant also claims that overprescription of controlled substances was the "sole cause" of his difficulties with the Board. First, although appellant had surrendered his DEA registration, he had reapplied for his DEA license at the time of the hearing before the Board so that he could treat patients with acute pain. Further, this court finds it difficult to characterize his surrender of his DEA license as "voluntary," as appellant's attorney stated before the Board. He did not surrender his license until the Cincinnati police and a representative from the DEA came to his office and took his DEA license as a result of an investigation into his dispensation of scheduled narcotics and his keeping of narcotics in his office. More importantly, overprescription was not the "sole cause" of his difficulties with the Board. The Board also found overwhelming evidence that supported a conclusion that appellant violated Ohio Adm. Code 4731-11-02(D) in failing to maintain accurate medical records. In addition, appellant testified that the only reason that he would treat the patients any differently in hindsight was so he would not get in trouble. He still believed that he gave the patients justifiable treatment, and specifically stated that he did not think that he did anything wrong. Therefore, we find this argument unpersuasive and without merit.
Appellant next argues that the permanent revocation was too harsh of a penalty because the Board found no aggravating circumstances and it did not distinguish his case from similar prior cases, in violation of the Board's disciplinary guidelines. As to the specific penalty imposed by the Board in this case, the court below held that:
 * * * The unanimous vote of the Board to permanently revoke his license was an option available to it and the Court cannot disturb that penalty absent a showing that it was not supported by the evidence. [Citation omitted.] It clearly was. Therefore, the Court hereby AFFIRMS the Board's Order permanently revoking the medical license of Appellant.
Under R.C. 4731.22(B), the Board is authorized to "limit, revoke, or suspend an individuals certificate to practice, refuse to register an individual, refuse to reinstate a certificate, or reprimand or place on probation the holder of a certificate for" one or more listed violations. It has been consistently held that once the common pleas court finds that the existence of a violation is supported by reliable, probative, and substantial evidence, it cannot modify a penalty authorized by R.C. 4731.22(B). Roy v. Ohio State Medical Bd. (1992), 80 Ohio App.3d 675,683; DeBlanco v. Ohio State Medical Bd. (1992),78 Ohio App.3d 194, 202, citing Henry's Cafe, Inc. v. Bd. of LiquorControl (1959), 170 Ohio St. 233; Sicking v. Ohio State MedicalBd. (1991), 62 Ohio App.3d 387, 395. Further, the Board does not have to consider its guidelines but, instead, must consider the range of sanctions set forth in R.C. 4731.22(B). See Garwood v.State Medical Bd. of Ohio (May 5, 1998), Franklin App. No. 97APE10-1325, unreported (1998 Opinions 1752), citing Brost v.Ohio State Medical Bd. (1991), 62 Ohio St.3d 218, 221, and Roy,supra, at 682-683.
In the present case, the trial court correctly determined that the Board's finding that appellant violated provisions of R.C. 4731.22(B) was supported by reliable, probative, and substantial evidence, and the Board imposed a penalty authorized by law. As a result, the trial court did not abuse its discretion in refusing to reconsider the Board's decision to permanently revoke appellant's license. Therefore, we find this argument without merit.
Appellant next argues that the Board's order was not in accordance with law because the opinion of Dr. Junglas was far from that of a "similarly-situated practitioner" as required pursuant to R.C. 4731.22(B)(6). Appellant points to the facts that Dr. Junglas practices in a "mega-office," is an appointed professor of medicine, has the luxury of practicing "ivory-pillar medicine," and has access to scores of sophisticated diagnostic routines. However, nowhere in R.C. 4731.22(B)(6) is there a requirement that the Board's expert be a similarly-situated practitioner. R.C 4731.22(B)(6) provides:
 (B) The board, by an affirmative vote of not fewer than six members, shall, to the extent permitted by law, limit, revoke, or suspend an individual's certificate to practice, refuse to register an individual, refuse to reinstate a certificate, or reprimand or place on probation the holder of a certificate for one or more of the following reasons:
* * *
 (6) A departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established[.]
Further, this court has held that it is not necessary that the state's expert be a practitioner in the same field as the doctor whose license the board proposes to revoke or suspend; however, the expert testifying on behalf of the state must express his opinions in terms of the standard to be imposed on that physician. Lawrence v. State Medical Bd. (Mar. 11, 1993), Franklin App. No. 92AP-1018, unreported (1993 Opinions 795). In the present case, Dr. Junglas testified extensively as to the standard of care imposed upon appellant, and his opinions were expressed in terms of the standard of care of similar practitioners under the same or similar circumstances. We find appellant's argument is without merit.
Appellant next argues that the patients in question were chronically ill with pain syndromes and were being compensated by state or federal commissions. Appellant presents no argument in support of this statement, and we see these reasons as no justification for the actions of and treatment rendered by appellant. Therefore, we find this argument to be without merit.
Finally, appellant argues that he was deliberately misled by the Board in December 1993 when he responded to a subpoena issued by the Board requesting patient records. Appellant wrote a summary letter to an investigator for the Board regarding his current treatment of some of the patients. Appellant argues that the investigator told him that his reply was "satisfactory and sufficient," and, thus, the Board should not have taken any subsequent action against him. It can only be surmised that appellant misunderstood the alleged statement by the investigator for the Board, in that the statement by the investigator likely concerned only his sufficient compliance with the subpoena. Obviously, appellant could not be cleared of the allegations until after a proper hearing and a vote by the Board or a consent agreement ratified by the Board. We find this argument is without merit.
Accordingly, we find that the court did not abuse its discretion in concluding that there was reliable, probative, and substantial evidence that appellant violated the statute and rules cited by the Board. Appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
LAZARUS, P.J., and PETREE, J., concur.