**GLADIEUX, Appellant,**

**v.**

**OHIO STATE MEDICAL BOARD, Appellee.**

[Cite as *Gladieux v. Ohio State Med. Bd.* (1999), 133 Ohio App.3d 465.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–1296.

Decided Sept. 30, 1999.

*Vorys, Sater, Seymour & Pease, L.L.P., Paul J. Coval* and *Gregory D. Russell,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Anne Berry Strait,* Assistant Attorney General, for appellee.

BOWMAN, Judge.

On January 10, 1997, appellee, the State Medical Board of Ohio, notified appellant, Gary F. Gladieux, that it intended to determine whether to take disciplinary action against him regarding his license to practice medicine in Ohio, based upon his having had sexual relationships with at least seven mothers of his pediatric patients between 1991 and 1993. The notice alleged that that conduct

violated Principles I and IV of the American Medical Association's ("AMA's") Principles of Medical Ethics, pursuant to R.C. 4731.22(B)(18)(a) and that the conduct also violated minimal standards of care pursuant to R.C. 4731.22(B)(6). A hearing was conducted before a hearing examiner. The board adopted the hearing examiner's findings of fact and conclusions of law, and on November 20, 1997, appellee issued an order suspending appellant's license to practice medicine in Ohio.

Appellant appealed to the Franklin County Court of Common Pleas pursuant to R.C. 119.12. The common pleas court affirmed the board's order. Appellant filed a notice of appeal and raises the following assignments of error:

"Assignment of Error No. 1

"The Medical Board violated Dr. Gladieux's right to due process of law when it failed to notify him, or any other Ohio physician, in advance of its proposed disciplinary action that having consensual sexual relations with adult parents of pediatric patients would subject him to professional sanctions.

"Assignment of Error No. 2

"The Medical Board violated the limitations placed on it by the United States and Ohio Constitutions when it sanctioned Dr. Gladieux for having consensual sexual relations with mothers of several of his pediatric patients without narrowly tailoring that prohibition to require something more than a mere potential effect on patient care.

"Assignment of Error No. 3

"The Medical Board violated the statutory authority granted to it by the General Assembly.

"Assignment of Error No. 4

"The Medical Board failed to present reliable, probative and substantial evidence regarding the AMA's interpretation of AMA Principles I and IV.

"Assignment of Error No. 5

"The Medical Board erred when it found that Dr. Gladieux's conduct with respect to Patients 3 and 4 failed to conform to minimal standards of care.

"Assignment of Error No. 6

"The Medical Board had an institutional financial incentive to impose sanctions against Dr. Gladieux that violates the due process guarantees of the United States and Ohio Constitutions."

 "In an appeal from a medical board's order, a reviewing trial court is bound to uphold the order if it is supported by reliable, probative, and substantial evidence, and is in accordance with law." *Pons v. Ohio State Med. Bd.* (1993), 66

Ohio St.3d 619, 621, 614 N.E.2d 748, 750. Reliable evidence is dependable, or evidence that can be trusted. "In order to be reliable, there must be a reasonable probability that the evidence is true." *Our Place, Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303, 1305. "Probative" requires evidence that tends to prove the issue in question and is relevant. "Substantial" requires evidence that has importance and value. See *Our Place, Inc.*

■ An appellate court's review is even more limited than that of the common pleas court. The standard is whether the common pleas court abused its discretion in finding that the administrative order was or was not supported by reliable, probative, and substantial evidence. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142. "Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the medical board or a trial court. Instead, the appellate court must affirm the trial court's judgment." *Pons,* 66 Ohio St.3d at 621, 614 N.E.2d at 751. In the syllabus of *Pons,* the Supreme Court of Ohio held:

"When reviewing a medical board's order, courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession."

The court, 66 Ohio St.3d at 621–622, 614 N.E.2d at 751, discussed the policy reason behind this, quoting *Arlen v. State* (1980), 61 Ohio St.2d 168, 173, 15 O.O.3d 190, 193–194, 399 N.E.2d 1251, 1254–1255:

" ' "The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of [people] equipped with the necessary knowledge and experience pertaining to a particular field." ' " Quoting *Farrand v. State Med. Bd.* (1949), 151 Ohio St. 222, 224, 39 O.O. 41, 42, 85 N.E.2d 113, 114.

■ By the first, second, third, and fourth assignments of error, appellant contends that the board violated its authority by sanctioning him. The General Assembly, through its police power, has bestowed upon the board administrative powers to "safeguard the public's interest in having competent, properly trained and educated, and experienced doctors." *Midwestern College of Massotherapy v. Ohio Med. Bd.* (1995), 102 Ohio App.3d 17, 23, 656 N.E.2d 963, 967. R.C. 4731.22(B)(6) grants the board the authority to discipline a physician for "[a] departure from, or the failure to conform to, minimal standards of care of similar

practitioners under the same or similar circumstances, whether or not actual injury to a patient is established." R.C. 4731.22(B)(18) grants the board the authority to discipline a physician for violating any provision of the code of ethics of the AMA.

The board found that appellant violated the AMA's Principles of Ethics Principle I, which provides that "[a] physician shall be dedicated to providing competent medical service with compassion and respect for human dignity," and the AMA's Principles of Ethics Principle IV, which provides that "[a] physician shall respect the rights of patients, of colleagues, and of other health professionals, and shall safeguard patient confidences within the constraints of the law."

■ Appellant contends that his due process rights were violated because there were no written ethical rules or standards within the profession that expressly prohibit a pediatrician from having sexual relations with the parent of a pediatric patient. Therefore, he argues that he had no notice that he could be sanctioned for such conduct.

■ This argument involves the constitutional prohibition against vagueness. The Due Process Clause of the Fourteenth Amendment requires sufficient definiteness in the language of a statute and requires that a person of ordinary intelligence be given fair notice that the conduct is prohibited. *State v. McDonald* (1987), 31 Ohio St.3d 47, 48, 31 OBR 155, 155–156, 509 N.E.2d 57, 58–59. However, a statute is not considered void for vagueness merely because it could have been written more precisely. *State v. Dorso* (1983), 4 Ohio St.3d 60, 61, 4 OBR 150, 150–151, 446 N.E.2d 449, 450–451. When the persons affected are a select group with specialized understanding of the subject being regulated, the degree of definiteness required to meet the due process requirements is measured by the common understanding of the group. *United States ex rel. Shott v. Tehan* (C.A.6, 1966), 365 F.2d 191, 198; see, also, *Fleming v. United States Dept. of Agriculture* (C.A.6, 1983), 713 F.2d 179, 184–185. In this case, medical professionals are a select group with a specialized understanding of the subject being regulated, and a common understanding among that select group satisfies the due process requirements.

Appellee's experts testified that licensed professionals are prohibited from having sexual relations with their patients because of the unequal balance of power and to maintain objectivity in order that the best interests of the patient always are paramount. The experts testified that having sexual relations with the parent of a pediatric patient was also prohibited because the parent is a surrogate for the child and is integral to the relationship between a pediatrician and patient in order to relate history or symptoms or give consent to treatment. Having sexual relations with a parent could affect the pediatrician's objectivity

and interfere with the quality of care given to the child. Charles Johnson, one of appellee's experts, stated that a physician should know of the prohibition even though it is not specifically written down because of the importance of the relationship a parent has with the pediatrician.

Although appellant's experts testified that a parent was not the patient in a doctor-patient relationship between a pediatrician and child, they did admit that sexual relations with a parent were "inadvisable," "not recommended," "undesirable," "not acceptable," and unethical. Given this testimony, the evidence provides that the ethical principles, although broadly written, provide sufficient notice that the conduct is prohibited.

The interpretation of the standards of care and the principles of medical ethics has been delegated to the board under R.C. Chapter 4731. The Supreme Court of Ohio has upheld this delegation. The power of the board was explored in *Pons*. In *Pons*, the board suspended the license of a physician for violating R.C. 4731.22(B)(6), (14), and (15) by engaging in a sexual relationship with a patient. The Supreme Court of Ohio determined that since a medical disciplinary proceeding is a special statutory proceeding conducted by twelve people, eight of whom are licensed physicians, a majority of the board possess the specialized knowledge necessary to determine the acceptable standard of general medical practice. See *Pons*, 66 Ohio St.3d at 623, 614 N.E.2d at 751–752; *In re Williams* (1991), 60 Ohio St.3d 85, 87, 573 N.E.2d 638, 639–640. The court concluded that the board is capable of "interpreting technical requirements of the medical field and quite capable of determining when conduct falls below the minimum standard of care." *Pons*, at 623, 614 N.E.2d at 752. The court found that the board was well within its statutory authority and had the discretion to weigh the evidence and determine that the physician had violated the ethics code. *Id.*, at 624, 614 N.E.2d at 752. As in this case, at the time the *Pons* case was decided, the AMA's ethical principles did not expressly prohibit sexual relations with a patient. Yet the court affirmed the board's decision and found that it had not exceeded its statutory authority in finding that the physician violated the principles by having sexual relations with a patient. The court also determined that reviewing courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession.

Similarly, in *State Med. Bd. of Ohio v. Murray* (1993), 66 Ohio St.3d 527, 613 N.E.2d 636, the Supreme Court of Ohio affirmed the decision of the board revoking the physician's license to practice medicine based upon his conduct of prescribing anabolic steroids to patients to enhance their athletic ability between January 1982 and October 1988. The physician argued that prior to the effective date of Ohio Adm.Code 4731–11–05, February 1, 1988, there were no medical standards regarding steroid use. The Supreme Court determined that the

comprehensive decision-making power of the board includes "the authority to rely on the board's own knowledge when making a decision rather than looking to the record for the opinion of an expert." *Id.* at 533, 613 N.E.2d at 641.

As demonstrated by the *Pons* and *Murray* cases, the board may impose sanctions against conduct that has the potential for harming the public. R.C. 4731.22(B)(6) provides that the board may find that a physician has failed to conform to the standards of care regardless of whether harm to the patient has occurred. The board is not limited to situations involving direct patient care as evidenced by R.C. 4731.22(B)(9), which grants the board authority to discipline a physician who has been convicted of a felony. Thus, appellant's constitutional rights were not violated by the board's finding of a potential effect on patient care. Appellant's first four assignments of error are not well taken.

By the fifth assignment of error, appellant contends that the board erred when it found that appellant's conduct with respect to Patients 3 and 4 failed to conform to minimal standards of care. Appellant's argument is based upon the finding by the hearing examiner that the testimony of the mother of Patients 3 and 4 was "highly suspect" and that the mother lacked credibility. However, the hearing examiner also found appellant's testimony lacked credibility. The hearing examiner then found that appellant had engaged in inappropriate behavior. Appellant argues that this finding is unsupported by the testimony.

The board found that the truth concerning the facts rested somewhere between the two versions; however, given appellant's admissions that the mother of Patients 3 and 4 kissed him and used her hands to stimulate him in the presence of her sleeping child in the exam room, the board had reliable, probative, and substantial evidence to find that appellant's care fell below the minimal standards of care of the profession. Appellant's fifth assignment of error is not well taken.

By the sixth assignment of error, appellant contends that the board had an institutional financial incentive to impose sanctions against appellant that violates the due process guarantees of the United States and Ohio Constitutions. Appellant argues that since R.C. 119.092 provides that the prevailing eligible party to an adjudication hearing is entitled to compensation for fees incurred in connection with the hearing, the board has an unconstitutional financial interest in the hearing. "[T]hose with substantial pecuniary interest in legal proceedings should not adjudicate these disputes." *Gibson v. Berryhill* (1973), 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488, 500. The test of whether a pecuniary interest violates due process is whether the situation is one " 'which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the

balance nice, clear, and true between the state and the accused.'" *Ward v. Monroeville* (1972), 409 U.S. 57, 60, 93 S.Ct. 80, 83, 34 L.Ed.2d 267, 271, quoting *Tumey v. Ohio* (1927), 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749, 758.

 In this situation, any pecuniary interest is remote. R.C. 119.092 provides that an individual must be determined to be an eligible party to apply for attorney fees. Where a hearing examiner conducted the hearing, the hearing examiner determines whether attorney fees are appropriate, not the board. The hearing examiner must find that the position of the agency in initiating the matter was not substantially justified, that there are no special circumstances that make an award unjust, and that the prevailing party did not engage in conduct during the hearing that unduly and unreasonably protracted the final resolution. Therefore, the prevailing party does not automatically receive the attorney fees. R.C. 119.092. An appeal of a denial of attorney fees goes to the common pleas court, not the board. Last, there is no evidence that payment of the attorney fees of a prevailing eligible party would have a financial impact on the board. The First Appellate District also struck down this argument in *Sohi v. Ohio State Dental Bd.* (1998), 130 Ohio App.3d 414, 720 N.E.2d 187. Thus, appellant's sixth assignment of error is not well taken. Therefore, we find that the trial court did not abuse its discretion in concluding there was reliable, probative, and substantial evidence to support the board's findings.

For the foregoing reasons, appellant's six assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

KENNEDY and PEGGY BRYANT, JJ., concur.