OPINION
Richard W. Feldman, M.D., appellant, appeals a November 27, 1998 entry of the Franklin County Court of Common Pleas affirming the order of the State Medical Board of Ohio ("Ohio Board"), appellee, revoking appellant's medical license.
Appellant held licenses to practice medicine in both Ohio and Tennessee. On September 17 and 18, 1996 and January 21 and 22, 1997, hearings were held before the Tennessee Board of Medical Examiners ("Tennessee Board") based upon allegations of misconduct by appellant that occurred while he was practicing in Tennessee. On February 11, 1997, the Tennessee Board issued an order, which included findings of fact that can be summarized as follows:
 During physical examinations that appellant conducted without a chaperone, two patients interpreted the examination to be inappropriate in a sexually explicit manner;
 In 1995, appellant screamed at a Tenncare patient and told her that she was responsible for a bill and that he would have to send an exaggerated bill to Tenncare. Appellant then threatened a child in the waiting room that if he did not remove his foot from appellant's chair, he would give him a shot. The Tenncare patient wrote a check for one-half of her bill, and appellant did not return such amount to her despite appellant's being reimbursed in full by Tenncare;
 In 1983, appellant was treating a 17-year-old girl for a bleeding ulcer. The girl told him that she had had her first sexual encounter and was afraid to tell her parents, and she sought medical information from him regarding sex. Before one scheduled visit, appellant met the girl in the office parking lot, told her the office was closed for lunch, and told her they should go have lunch together. Appellant directed the girl to drive to his home in order to retrieve documents. Appellant invited the girl into his house where the two engaged in sexual intercourse. During subsequent visits, appellant continued to exhibit sexual behavior towards her;
 In 1994, a patient consulted appellant for a cyst on her tailbone. Appellant made remarks about the patient's breasts and told her that he thought she had a vaginal infection. Upon performing a pelvic examination, appellant told her that she had "an old fish odor" and told a female assistant to "come closer and smell this";
 Appellant told a patient in the presence of the patient's ex-husband that there was nothing he could do for her back pain and that she could put a gun in her mouth and pull the trigger;
 While performing a pelvic examination, appellant leaned between the patient's legs and said "hello," as if waiting for an echo. When the patient's husband, who was also in the office, objected to the remark, appellant stated he was just joking;
 While in his office, appellant spoke in derogatory and sexually suggestive terms about female staff and patients. On one occasion, appellant asked a patient if he had seen his new nurse whom he had hired for her "brains," while at the same time cupping his hands in front of his chest. This same patient heard appellant state to a male staff member, "Boy, she's got some knockers" when referring to a female patient in an examination room;
 Appellant frequented a massage parlor where he would exchange medical treatment, prescriptions, and/or medications for sex with female workers. On one occasion, after setting up a portable operating table in one of the parlor's rooms and removing a wart from the owner's hand, he asked the owner, "I can have any one, right?" indicating that he could choose any one of the female workers and have sex with her in exchange for the wart removal;
 Appellant acted unprofessionally in inviting young women on a vacation trip at the time of an office visit;
 In 1991, after a patient was fitted with a heart monitor, appellant instructed the patient to be sure to have sex while wearing it. Because she was not married and appellant knew this, the patient asked what he meant. Further, this patient dressed in slacks and "comfortable" shoes, and appellant asked her why she was dressed like a dyke or a bitch; and Appellant dressed unprofessionally in the office from time to time.
The Tennessee Board found that appellant's actions violated the Tennessee Medical Practice Act, and ordered that: (1) appellant's license be placed on probation for one year; (2) appellant undergo counseling with the Tennessee Physician's Health Program; (3) appellant deliver a copy of the final order to hospitals where he had practice privileges; and (4) appellant pay a fine of $2,500.
The Ohio Board notified appellant on September 10, 1997 that it intended to take action on his medical license based upon R.C. 4731.22(B) (22), which allows the Ohio Board to discipline the Ohio license of a physician whose medical license in another state has been disciplined by the licensing authority of the other state. On November 24, 1997, a hearing was held before the Ohio Board's hearing examiner, who accepted evidence consisting of the testimony of appellant, the transcript of the Tennessee Board's deliberations, and the Tennessee Board's findings of fact and final order. On December 18, 1997, the Ohio hearing examiner issued an order recommending that appellant's Ohio license be permanently revoked but that the revocation be stayed subject to a five-year probationary period. On January 14, 1998, the Ohio Board unanimously voted to modify the hearing examiner's recommendation and to instead permanently revoke appellant's Ohio license.
Appellant appealed the entry of the Ohio Board revoking his medical license to the Franklin County Court of Common Pleas. Appellant argued that the order of the Ohio Board was not supported by reliable, probative, and substantial evidence. On November 2, 1998, the Franklin County Court of Common Pleas affirmed the order of the Ohio Board revoking appellant's medical license, finding that there was reliable, probative, and substantial evidence to support the Ohio Board's order. Appellant appeals the court's judgment, assigning the following errors:
APPELLANT'S FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY HOLDING THAT THE ORDER OF THE STATE MEDICAL BOARD OF OHIO COMPLIED WITH R.C. § 119.09.
APPELLANT'S SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN HOLDING THAT THE ORDER OF THE STATE MEDICAL BOARD OF OHIO WAS SUPPORTED BY SUBSTANTIAL, RELIABLE AND PROBATIVE EVIDENCE.
APPELLANT'S THIRD ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN DETERMINING THAT IT WAS WITHOUT AUTHORITY TO MODIFY THE SANCTION IMPOSED BY THE OHIO BOARD.
Appellant argues in his first assignment of error that the trial court erred in finding that the order of the Ohio Board complied with R.C. 119.09. R.C. 119.09 provides, in pertinent part:
 * * * The recommendation of the referee or examiner may be approved, modified, or disapproved by the agency, and the order of the agency based on such report, recommendation, transcript of testimony and evidence, or objections of the parties, and additional testimony and evidence shall have the same effect as if such hearing had been conducted by the agency. No such recommendation shall be final until confirmed and approved by the agency as indicated by the order entered on its record of proceedings, and if the agency modifies or disapproves the recommendations of the referee or examiner it shall include in the record of its proceedings the reasons for such modification or disapproval.
(Emphasis added).
In the present case, the Ohio hearing examiner issued an order recommending that appellant's Ohio license be permanently revoked but that the revocation be stayed subject to a five-year probationary period. However, the Ohio Board unanimously voted to modify the hearing examiner's recommendation to instead permanently revoke appellant's Ohio license. The trial court found that the minutes of the Ohio Board clearly reflected the basis for its decision to modify the examiner's recommendation from one of probation to one of revocation. Appellant argues that the Ohio Board did not set forth reasons for modifying the examiner's report as required by R.C. 119.09. We disagree.
At the outset of the deliberations by the Ohio Board in this case, as set forth in the minutes of the January 14, 1998 meeting, a motion was immediately made to amend the examiner's proposed order of probation to permanent revocation. The minutes summary reveals the following discussion:
 Dr. Steinbergh stated that, after reviewing this case, she felt that Dr. Feldman was rather vulgar and somewhat disgusting, and that revocation is appropriate. She doesn't think probation or suspension is appropriate in this case.
 Dr. Stienecker stated that there is no statute against vulgarity. He continued that, despite the allegations in the Tennessee Order that were dismissed for whatever reason, there is an allegation involving Dr. Feldman's having sex with the 17-year-old or 18-year-old patient. Whether the sex was consensual or not, or whether it was statutory rape under Tennessee law, is immaterial in Ohio. Even if it was consensual sex with a patient-and certainly this was a young patient over whom he had a predatory advantage-it constitutes justification for revocation under Ohio's statutes. Dr. Stienecker stated that he is therefore in full agreement with the amendment.
 Dr. Heidt stated that Dr. Feldman was a very crude and very unprofessional physician.
 Dr. Garg indicated that he agrees with what has been said. He questioned why the original Proposed Order stayed the revocation. He didn't understand this.
 Dr. Bhati stated that he found the statements made by a member of the Tennessee Board to be interesting. He felt that that Board member took this situation very lightly. Dr. Bhati stated that he personally can't imagine a physician who had been found guilty of sexual misconduct being permitted to continue to practice medicine. Dr. Bhati spoke in support of the proposed amendment.
We find that the minutes clearly reveal the reasons for the Ohio Board's modification of the examiner's recommendation, in compliance with R.C. 119.09. Therefore, we find that the trial court did not err in holding such, and appellant's first assignment of error is without merit and is overruled.
Appellant argues in his second assignment of error that the trial court erred in finding that the order of the Ohio Board was supported by substantial, reliable, and probative evidence. In an appeal from a state medical board's order, a reviewing trial court is bound to uphold the order if it is supported by reliable, probative, and substantial evidence, and is in accordance with law. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621; R.C. 119.12. Reliable, probative, and substantial evidence has been defined as follows:
 * * * (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.
Our Place, Inc. v. Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570,571. (Footnotes omitted.)
However, an appellate court's review is even more limited than that of the trial court. Pons, at 621. While it is incumbent on the trial court to examine the evidence, the appellate court is to determine only if the trial court abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Id. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for that of the medical board or a trial court. Id.
Instead, the appellate court must affirm the trial court's judgment. Id.
In Pons, the Ohio Supreme Court held:
 Moreover, when reviewing a medical board's order, courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession. The policy reason for this was noted in Arlen v. State
(1980), 61 Ohio St.2d 168 * * *: "` * * * The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of [people] equipped with the necessary knowledge and experience pertaining to a particular field. * * *'" (Quoting Farrand v. State Med. Bd. [1949], 151 Ohio St. 222, 224 * * *.)
Id. at 621-622. Therefore, absent an abuse of discretion of the trial court, this court must affirm the trial court's judgment.
In appellant's brief, he contends that the order was not supported by reliable, probative, and substantial evidence. Specifically, appellant argues that the Ohio Board merely based its decision solely upon the existence of the Tennessee order and, further, did not give any consideration to the alternative sanctions available under Ohio law, such as censure, probation status, limitation of practice, suspension of license, or other action set forth in R.C. 4731.22(B). However, the plain language of R.C. 4731.22(B) (22) permits the Ohio Board to take disciplinary action based solely upon actions taken by another state's medical licensing agency to discipline an individual's license. The Ohio Board had before it a copy of the Tennessee order, appellant's testimony, and a transcript of the Tennessee Board's deliberations. R.C. 4731.22(B) requires no more evidence for the Ohio Board to take disciplinary action in the present case, and appellant cites no other authority for his proposition that more is necessary.
Further, the minutes from the Ohio Board's meeting specifically reflect that each member understood that "the disciplinary guidelines do not limit any sanction to be imposed, and that the range of sanctions available in each matter runs from dismissal to permanent revocation." This court has found before that the identical language contained in the Ohio Board's minutes illustrates that the board considered the full realm of sanctions available to it. Bouquett v. Ohio State Med. Bd. (1997),123 Ohio App.3d 466, 472-473. Therefore, appellant's second assignment of error is overruled.
Appellant argues in his third assignment of error that the trial court erred in determining that it was without authority to modify the sanction imposed by the Ohio Board. However, it has been consistently held that once the common pleas court finds that the existence of a violation is supported by reliable, probative, and substantial evidence, it cannot modify a penalty authorized by R.C. 4731.22(B). Roy v. Ohio State Med. Bd. (1992), 80 Ohio App.3d 675,683; DeBlanco v. Ohio State Med. Bd. (1992), 78 Ohio App.3d 194,202 citing Henry's Cafe, Inc. v. Bd. of Liquor Control
(1959), 170 Ohio St. 233; Sicking v. Ohio State Med. Bd. (1991),62 Ohio App.3d 387, 395.
In the present case, the trial court correctly determined that the Ohio Board's actions pursuant to R.C.4731.22(B) (22) were supported by reliable, probative, and substantial evidence, and the Ohio Board imposed a penalty authorized by law. As a result, the trial court did not abuse its discretion in refusing to reconsider the Ohio Board's decision to permanently revoke appellant's license. Therefore, we find this argument without merit, and appellant's third assignment of error is overruled.
Accordingly, appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
TYACK and KENNEDY, JJ., concur