OPINION
This is an accelerated calendar appeal. Julia A. Kanaga ("appellant") appeals the July 24, 2000 judgment entry by the Lake County Court of Common Pleas, Probate Division, denying the application to change the surnames of her minor daughters, Sarah Eileen Paquette ("Sarah") and Kate Lynn Paquette ("Kate"), to Kanaga. On January 16, 2001, appellant filed a motion to dismiss the appeal pertaining to Sarah due to the fact that, upon turning eighteen, she was adopted and her surname had changed to Kanaga. This court granted the motion. Accordingly, the instant appeal concerns only the name change of Kate, born August 11, 1984.
Appellant was previously married to Philip J. Paquette ("appellee"). Three children were born as issue of their marriage. Appellant and appellee divorced in June 1992. Kate has resided with her mother and Glenn W. Kanaga, Sr. since April 15, 1992. Upon marrying Glenn Kanaga in March 1998, appellant took the surname Kanaga. On August 24, 1999, appellant filed an application to change the surnames of Sarah and Kate. Kate was fifteen (15) years old at this time. The reasons stated were to avoid the embarrassment, inconvenience, and discomfort at school, church, and social functions in trying to explain why they had a different last name from the rest of the family with whom they reside.[1]
On September 7, 1999, appellee filed objections to the name change application, stating he supported Sarah and Kate, he demonstrated an abiding interest in them, he was not infamous, he exercised visitation when he was not denied, and he is currently seeking court enforcement of his visitation rights.
Thereafter, on September 30, 1999, a hearing was conducted before a magistrate, which was continued to November 29, 1999 and November 30, 1999. The magistrate's decision, filed January 20, 2000, recommended a denial of the name change application because it was not in the best interest of Sarah and Kate. Upon being granted an extension of time, on April 3, 2000, appellant filed timely objections to the magistrate's decision.[2] On May 15, 2000, appellee filed a response to the objections. Subsequently, on July 10, 2000, a hearing was conducted to address the objections.[3] On July 24, 2000, the trial court overruled the objections and adopted the magistrate's decision. Appellant filed a notice of appeal on August 24, 2000.[4]
In appellant's sole assignment of error, appellant avers the trial court abused its discretion when the court denied her objections, adopted the magistrate's factual findings, and applied the incorrect legal standard. Specifically, appellant contends the trial court erred in finding appellee supported his children, with some lapses, and in discounting her daughter's feelings. Appellant further argues the evidence does not support the conclusion that a name change would affect the preservation and development of relationships because such have already deteriorated because of appellee's neglect.
Upon review of a name change application, an appellate court may only
reverse a trial court's decision upon a finding of abuse of discretion.Jarrells v. Epperson (1996), 115 Ohio App.3d 69, 71. An appellate court may not substitute its judgment for that of the trial court. Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. Pursuant to R.C.2717.01, when dealing with a name change application pertaining to a minor, a trial court must consider the "best interest of the child" in determining whether the requisite requirement of "reasonable and proper cause" has been established. In re Willhite (1999), 85 Ohio St.3d 28, paragraph one of the syllabus. A trial court must consider the following factors when determining whether a name change is in the best interest of the child:
 "[1] the effect of the change on the preservation and development of the child's relationship with each parent; [2] the identification of the child as part of a family unit; [3] the length of time that the child has used a surname; [4] the preference of the child if the child is of sufficient maturity to express a meaningful preference; [5] whether the child's surname is different from the surname of the child's residential parent; [6] the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's; [7] parental failure to maintain contact with and support of the child; and [8] any other factor relevant to the child's best interest."
 Id. at paragraph two of the syllabus. In the case sub judice, the magistrate, upon considering the Willhite
factors, concluded that it was not in Kate's best interest to have her surname changed. The magistrate stated Kate used Paquette all her life, appellee had not failed to maintain contact or support (despite lapses in both areas), and the discomfort, embarrassment, or inconvenience that Kate encountered was minimal. The magistrate added it was primarily in her church that the name change would be more convenient and less of a discomfort. The magistrate indicated that, while Kate did express a preference, she was not persuaded that Kate's preference was meaningful or made with sufficient maturity, despite Kate's chronological age. The magistrate reasoned that Kate appeared to be easily influenced by those around her. The magistrate further stated the name change would negatively impact on the relationships that Kate had with each parent.
While we must review the record to determine whether the trial court's decision has a basis in the testimony and the evidence adduced at the hearing, our review is narrowly limited to whether the trial court abused its discretion. We are prohibited from substituting our judgment for that of the trial court. Upon considering the record, we do not find that the trial court abused its discretion in denying appellant's objections and in adopting the magistrate's decision. The record demonstrates, after considering the Willhite factors, the magistrate determined that Kate's best interest was served by retaining the surname Paquette.
This determination is supported by testimony and evidence adduced at the hearing. For instance, the name change would, as stated by the magistrate, further aggravate an already unstable relationship. The record includes letters by appellant, appellee, and Glenn Kanaga, demonstrating the hostility, accusations, threats, and demands made by all three individuals over the years. Additionally, Kate testified that she has been known as Kate Paquette in school, by her friends, and by her doctors. Kate also testified that her church directory lists her as Kate Kanaga; however, this was not at her request; rather, it was just assumed. As to Kate's maturity to express a meaningful preference, Kate testified that she would not believe her father no matter what proof was presented to show that he did send her the gifts that she never received.[5]
Further, appellee, residing in Michigan, has maintained some contact with Kate, even though, as stated by the magistrate, there were lapses in the past.[6] Such contact has increased over the years, and, as recent as April 1999 and August 1999, Kate visited her father in Michigan. As to appellant's contention that appellee is in arrears in his support, appellee denied this claim and appellant did not present any evidence to corroborate this contention.
Given the fact that the magistrate was in the best position to evaluate the parties' credibility and intentions and observe Kate's testimony, the trial court's decision to adopt the magistrate's findings of fact and application of the law is not arbitrary, capricious or unconscionable. The parties to the instant appeal must not overlook the fact that the concern of this case is whether a name change is in the best interest of Kate. While there is indication from appellant's appellate brief that, upon turning age eighteen, Kate plans to be adopted by her stepfather, the trial court's decision demonstrates one last effort to salvage the parent-child relationship between Kate and appellee. By no means can we conclude that this decision by the trial court, adopting the magistrate's decision, is arbitrary, capricious, or unconscionable. If upon turning eighteen, Kate decides to pursue an adult adoption by her stepfather, such a decision would be made solely by Kate and not on behalf of Kate.
For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, Probate Division, denying the name change application for Kate Lynn Paquette is affirmed.
 ___________________________ JUDGE DIANE V. GRENDELL
FORD, P.J., CHRISTLEY, J., concur.
[1] There are four older stepsiblings from Kate's stepfather's previous marriage, three younger half siblings by appellant and Kate's stepfather, and an older brother, Andrew, and older sister, Sarah, from her mother and father's marriage, who were adopted by her stepfather upon turning eighteen.
[2] As an aside, while the reason for the following is not stated in the record, after appellant filed her objections, Chief Justice Moyer assigned Judge John J. Donnelly of the Cuyahoga Court of Common Pleas, effective April 7, 2000, to preside over the instant case in the Lake County Court of Common Pleas.
[3] Although the instant case remained under the jurisdiction of the Lake County Court of Common Pleas, despite the reassignment, the July 10, 2000 hearing was held in the Cuyahoga County Courthouse.
[4] Service of the trial court's judgment entry was never docketed. On January 29, 2001, this court sua sponte remanded so the parties could be properly served. As of January 30, 2001, the docket reflected service, and the instant appeal proceeded.
[5] A UPS shipping record on August 6, 1998 showed appellee sent Kate a package containing an art set; however, Kate testified she never received it. However, Kate did testify that she had received other things from her father over the years.
[6] Recently, on July 13, 1999, a judgment entry by the Lake County Court of Common Pleas, Probate Division, set out a time schedule for appellee to make telephone calls to his daughters.