DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant E.C. has appealed from the decision of the Lorain County Court of Common Pleas, Juvenile Division, that granted a motion to bind her over to the jurisdiction of the Lorain County Court of Common Pleas, General Division, as an adult. This Court affirms.
 I {¶ 2} On November 26, 2001, a complaint was filed against Defendant-Appellant E.C. in the Lorain County Court of Common Pleas, Juvenile Division. Appellant was in the custody of the Ohio Department of Youth Services ("ODYS") awaiting disposition for involuntary manslaughter. The State alleged in its complaint that Appellant committed the following crimes at the Lorain County Detention Home: 1) aggravated burglary in violation of R.C. 2911.11(A)(1), a felony of the first degree; 2) escape in violation of R.C. 2921.34(A)(1), a felony of the second degree; 3) disrupting public service in violation of R.C.2909.04(A)(1), a felony of the fourth degree; 4) felonious assault in violation of R.C. 2903.11(A)(1)/(2), a felony of the second degree; 5) kidnapping in violation of R.C. 2905.01(A)(2), a felony of the first degree; 6) receiving stolen property in violation of R.C. 2913.51(A), a felony of the first degree; and 7) aggravated robbery in violation of R.C. 2911.01(A)(3), a felony of the first degree.
 {¶ 3} On November 29, 2001, pursuant to R.C. 2151.26(C)[1] and Juv.R. 30, the State filed a motion to transfer Appellant for prosecution as an adult. The State alleged that Appellant was "not amenable to care or rehabilitation or further care or rehabilitation in any facility designed for the care, supervision, and rehabilitation of delinquent children; and the safety of the community may require that she be placed under legal restraint, including, if necessary, for the period extending beyond her majority."
 {¶ 4} On December 18, 2002, Appellant, her mother, and her attorney waived oral testimony required for the probable cause phase of the Juv.R. 30 hearing. The parties stipulated to age, venue, and jurisdiction. The court found probable cause to believe that Appellant committed the crimes as alleged in the State's complaint and set an amenability hearing. The amenability hearing was held on March 22, 2002 and the court determined that Appellant should be bound over as an adult.
 {¶ 5} On May 17, 2002, a Lorain County grand jury indicted Appellant for 1) escape in violation of R.C. 2921.34(A)(1), a felony of the second degree; 2) disrupting public service in violation of R.C. 2909.04(A)(1), a felony of the fourth degree; 3) felonious assault in violation of R.C.2903.11(A)(2), a felony of the second degree; 4) kidnapping in violation of R.C. 2905.01(A)(2), a felony of the first degree; and 5) aggravated robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree. Appellant entered a plea of not guilty to the charges and a written plea of not guilty by reason of insanity. On February 12, 2003, Appellant changed her not guilty by reason of insanity pleas to "no contest" pleas to all charges in the indictment. The court accepted Appellant's pleas, found her guilty, and sentenced her to five years for the escape conviction, six months for the disrupting public service conviction, five years for the felonious assault conviction, five years for the kidnapping conviction, and five years for the aggravated robbery conviction, with all sentences to run concurrently.
 {¶ 6} Appellant has timely appealed her bind over, asserting one assignment of error.
 II Assignment of Error of Number One
"The juvenile court erred and abused its discretion by determining that appellant was not amenable to care or rehabilitation or further care or rehabilitation in any facility designed for the care, supervision, and rehabilitation of delinquent children."
 {¶ 7} In her sole assignment of error, Appellant has argued that the trial court erred in binding her over to the adult criminal system. Specifically, Appellant has argued that there was sufficient competent and credible evidence of Appellant's amenability. We disagree.
 {¶ 8} Juv.R. 30 and R.C. 2151.26 set forth the standard by which a juvenile may be tried as an adult in a criminal proceeding. Pursuant to Juv.R. 30, when a juvenile court is considering transferring "a case for criminal prosecution, the court shall hold a preliminary hearing to determine if there is probable cause to believe that the child committed the act alleged and that the act would be an offense if committed by an adult" Juv.R. 30(A). A case transfer to adult criminal court, also known as a bind-over, can be mandatory or discretionary. Juv.R. 30(B)/(C).
 {¶ 9} "[A]fter a complaint has been filed alleging that a child is a delinquent child for committing an act that would be a felony if committed by an adult, the court at a hearing may transfer the case for criminal prosecution[.]" R.C. 2151.26(C)(1). Before ordering a discretionary bind-over, a court considers the age of the victim, any physical harm to the victim, whether the juvenile had a concealed weapon, and prior rehabilitative efforts. R.C. 2151.26(C)(2). The court also determines: 1) whether the juvenile was 14 years or older at the time of the offense; 2) whether probable cause exists for the act charged; and 3) whether there are reasonable grounds to find that the "child is not amenable to care or rehabilitation or further care or rehabilitation in any facility designed for the care, supervision, and rehabilitation of delinquent children" and that "[t]he safety of the community may require that the child be placed under legal restraint, including, if necessary, for the period extending beyond the child's majority." R.C. 2151.26(C)(1). Both Juv.R. 30 and R.C. 2151.26(F) require the court to state the reasons for the transfer.
 {¶ 10} "The juvenile court enjoys wide latitude in determining whether to relinquish jurisdiction of the juvenile, and its ultimate decision will not be reversed absent an abuse of discretion." State v. Lopez
(1996), 112 Ohio App.3d 659, 662, citing State v. Watson (1989),47 Ohio St.3d 93, 95. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621.
 {¶ 11} Appellant has argued that her bind-over was unreasonable because the court relied too heavily on the seriousness of the alleged offense rather than her age and her mental and physical conditions.
 {¶ 12} During Appellant's amenability hearing on March 22, 2002, the State presented three witnesses. Dr. Sherri McClurg ("Dr. McClurg"), a psychologist with Bellefaire JCB, testified to the following. Dr. McClurg completed a psychological evaluation on Appellant in November 2001. Appellant was referred to Dr. McClurg by her probation officer after she was charged in the death of a young child. Dr. McClurg completed several mental health tests on Appellant and interviewed her, her mother, other family members, other people involved in the case, different mental health professionals, and people from Appellant's school district. Based on her interviews with Appellant, Dr. McClurg diagnosed Appellant with "Post-traumatic Stress Disorder, as well as Major Depression Episode Recurrent, * * * with Psychotic Features, and also a Rule out for Schizophrenia." From her interview with Appellant and her mother, Dr. McClurg learned that Appellant was "sadistically sexually molested" as a child during two different periods of time by the same offender. Appellant's response to the abuse "was very current for her" and even resulted in hallucinations.
 {¶ 13} Dr. McClurg continued her testimony testifying to the following. Appellant's Post Traumatic Stress Disorder is treatable by treating her "on a longterm basis in a contained setting." She was not able to give an exact amount of time the treatment would take, but she found it needed to be "at least * * * probably a minimum of a year of real intense treatment with her." Along with therapy, Appellant's treatment would involve a medication regimen. As part of her evaluation, Dr. McClurg reviewed Appellant's legal history and found that Appellant once kicked and assaulted a boy with a tennis racket in a park, bit her neighbor, and killed a child. Dr. McClurg believed that Appellant was "probably more likely to get the treatment she needs in the juvenile system."
 {¶ 14} Dr. McClurg testified to the following on cross-examination. She had not spoken with Appellant since November 2001. Appellant was identified as having learning difficulties in school and when she was placed in the appropriate programs she responded favorably. One teacher informed Dr. McClurg that Appellant dealt appropriately with her and with other students. Dr. McClurg believed that Appellant could receive the treatment necessary to deal with her various mental issues in the juvenile court system.
 {¶ 15} On re-direct examination, Dr. McClurg testified to the following. She believed Appellant should be "in a secure, locked facility."
 {¶ 16} After the State completed its questioning of Dr. McClurg, the court made some inquiries. The court's questioning revealed the following information. Appellant bore a child that was living with her mother. Dr. McClurg was not sure if the only facility that Appellant could be committed to within ODYS could treat her. Dr. McClurg was not familiar with the adult prison system and whether they could treat Appellant. Dr. McClurg believed Appellant would have to be contained for at least a year, but could not predict the exact amount of time. Dr. McClurg never visited Appellant's home.
 {¶ 17} Dr. Scott Quimby ("Dr. Quimby"), a psychologist with ODYS, testified to the following. He works at Riverview Juvenile Correctional Facility, which is exclusively for girls, and had interviewed/counseled Appellant at least nine times. Dr. Quimby knew Appellant was at Riverview for a conviction of involuntary manslaughter of a young child. Appellant was diagnosed as having Post-traumatic stress disorder, Dissociative Amnesia and a depressive disorder. Appellant was on an antipsychotic medication, a mood stabilizer, and an antidepressant. Appellant was not schizophrenic. Appellant was placed in the "special needs unit" at Riverview, which is for "youth with serious mental health problems [.]" Appellant had previously received counseling for her mental health issues.
 {¶ 18} Dr. Quimby continued his testimony and testified to the following. He believed Appellant needed to be kept in a secure facility and she needed substantial help. Without substantial help "[Appellant] could pose a danger [.]" He believed she needed to be in a secure facility for her safety and the safety of others. Dr. Quimby could not guess how long it would take to rehabilitate Appellant. When asked whether ODYS could rehabilitate Appellant by the time she reaches the age of 18 Dr. Quimby responded "I believe that [she] can be substantially helped." The State followed up by asking: "does that mean completely rehabilitated so she can be released from a secure facility?" Dr. Quimby responded: "I can't answer that." He also answered that he was not able to "guess" if she could be rehabilitated by time she was 18.
 {¶ 19} Dr. Quimby testified to the following on cross-examination. Appellant will receive the treatment she needs until she is released from Riverview. While at Riverview, Appellant has adjusted well to her medications and her behavior has been very good. Appellant is "very cooperative and desirous of counseling, as well as the medication."
 {¶ 20} On re-direct examination, Dr. Quimby testified to the following. Appellant could be released from ODYS before she reaches the age of 21.
 {¶ 21} After the State's re-direct, the court inquired of Dr. Quimby and he testified that he had not checked out Appellant's family environment and he did not know "a great deal about her family environment."
 {¶ 22} Dr. Joseph Konieczny ("Dr. Konieczny"), a psychological consultant, testified to the following. Appellant was referred to Dr. Konieczny for a psychological evaluation pursuant to Juv.R. 30. Prior to completing his report for the court, Dr. Konieczny reviewed Appellant's previous treatment summaries, her juvenile court record, her school records, and a competency assessment; he also consulted with Dr. Quimby and a social worker from Riverview. Dr. Konieczny diagnosed Appellant with "Adjustment Disorder with Mixed Disturbance of Emotions and Conduct, Chronic." The best setting for Appellant's treatment "would be in a controlled setting where she is able to receive very consistent treatment [.]" Dr. Konieczny was not sure if Appellant's home setting was providing that environment. In 1999, Appellant was treated at Laurelwood and was diagnosed with "Dysthymic Disorder * * * Attention Deficit/Hyperactivity Disorder, Intermittent Explosive Disorder, and Learning Disorder Not Otherwise Specified." Dr. Konieczny characterized Appellant's behavior since her 1999 stay at Laurelwood as escalating in a violent manner.
 {¶ 23} Dr. Konieczny continued his testimony, testifying to the following. As part of his report to the court, he outlined factors that supported Appellant's amenability and factors that weighed against it. The following factors supported Appellant's amenability: 1) with only two prior adjudications Appellant had a "relatively minimal history of involvement with the Juvenile Court [;]" 2) after her first adjudication she initially showed positive adjustment; 3) Appellant had "an underlying history of trauma[;]" 4) she responded positively to treatment at Riverview; and 5) Appellant was "well below the age of majority[.]" The following factors weighed against Appellant's amenability: 1) prior adjudication for manslaughter; 2) history of violent behavior; 3) escalating violent behavior; 4) previously received treatment; 5) "several year history of acting out behavior in school[;]" and 6) "the current acts with which she is accused occurred while in detention awaiting placement[.]" Dr. Konieczny also found that Appellant was able to control herself. If Appellant were to stop taking her medication, Dr. Konieczny would be concerned about her re-offending.
 {¶ 24} Dr. Konieczny testified to the following on cross-examination. "[T]o the best of [Dr. Konieczny's] knowledge [,]" Appellant's mother had always been supportive of Appellant and her treatment. When Appellant was placed in a special program at her school she responded positively. Appellant was victimized throughout a significant part of her childhood. Appellant's Chronic Adjustment with Mixed Emotions is the result of significant trauma she suffered as a child. The best setting for Appellant would be a secured setting. Riverview provided Appellant her first exposure to intense treatment. It would be a fair statement to say that prior to Riverview, Appellant was not receiving the appropriate level of treatment necessary to treat her diagnoses.
 {¶ 25} Dr. Konieczny testified to the following on re-direct examination. Prior to Riverview, Appellant's acting out was severe and with very tragic consequences. If Appellant does not receive the appropriate treatment her violent behavior could escalate to manslaughter again.
 {¶ 26} The court also admitted the following State's exhibits: 1) Appellant's juvenile court record; 2) an investigation report; 3) a case management inventory; 4) Appellant's individualized education plan; 5) a psychological report; 6) two psychological evaluations; and 7) a school record. The admitted evidence established that prior to being adjudicated for manslaughter of an infant Appellant committed other acts of violence that did not result in charges. Specifically, the evidence showed that Appellant admitted to killing her family pets, a cat and a dog, that she repeatedly choked her boyfriend, and that she admitted to physically harming children on two prior occasions.
 {¶ 27} In its journal entry binding Appellant over, the court stated that it "listened to the testimony of all of the witnesses and * * * reviewed all of the exhibits admitted into evidence, [and found] that [Appellant] is not amenable to care or rehabilitation or further care or rehabilitation in any facility for delinquent children." The court further found "that because of the nature of the offense allegedly committed the safety of the community may require legal restraint for a period extending beyond [Appellant's] majority." The following facts weighed heavily in the court reaching its decision:
"1. At the time of the act charged the juvenile had been adjudicated a delinquent child on a previous case and was awaiting dispositional hearing.
"2. The juvenile's relationship with the victims facilitated the act.
"3. The victims suffered physical and psychological harm.
"4. The results of previous juvenile sanctions and programs show rehabilitation will not occur in the juvenile system.
"5. The juvenile is emotionally, physically, and psychologically mature enough for transfer.
"6. There is not sufficient time for rehabilitation of the child in the juvenile system."
 {¶ 28} The court also considered the age of the juvenile, the previous efforts to treat or rehabilitate, and the child's family environment.
 {¶ 29} When the court announced its decision on the record on April 2, 2002, the court found that the "following weighed heavily in determining that the child [was] not amenable to the juvenile justice system[:]" 1) "at the time of the act charged, the juvenile had been adjudicated a delinquent child on a previous case and was awaiting dispositional hearings; [2)] the juvenile's relationship with the victims facilitated the act[;]" 3) the "victims suffered physical and psychological harm[;]" 4) "[t]he results of previous juvenile sanctions and programs show rehabilitation will not occur in the juvenile justice system[;]" 5) Appellant was "emotionally, physically, and psychologically mature enough for transfer[;]" and 6) "there's not sufficient time for rehabilitation of the child in the juvenile system."
 {¶ 30} Due to the fact that Appellant stipulated that she was over the age of 14 at the time of the offense and waived a probable cause hearing, our review of the court's decision focuses on its determination that Appellant is not amenable to care or rehabilitation or further care or rehabilitation in any facility designed for the care, supervision, and rehabilitation of delinquent children and that the safety of the community may require that Appellant be placed under legal restraint, including, if necessary, for the period extending beyond her majority. See R.C. 2151.26(C)(1). We find that the trial court followed the proper procedural requirements in relinquishing its jurisdiction and therefore, did not abuse its discretion. The court followed Juv.R. 30 and R.C.2151.26(F) and stated its reasons for binding over Appellant. Further, court documents establish that the court considered the proper factors under R.C. 2151.26 and the record supports its findings. Based on the foregoing, we find that the juvenile court's decision binding Appellant over was not unreasonable, arbitrary, or unconscionable.
 III {¶ 31} Appellant's sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J., Carr, J., concur.
[1] R.C. 2151.26 was amended and renumbered R.C. 2152.12, effective January 1, 2002. This Court refers to the statute as it was numbered at the time Appellant was charged.