OPINIONS OF THE SUPREME COURT OF OHIO
The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.

Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.

NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


Pons, Appellee, v. Ohio State Medical Board, Appellant.
[Cite as Pons v. Ohio State Med. Bd. (1993),        Ohio
St.3d      .]
Physicians -- State Medical Board -- Disciplinary proceeding --
    When reviewing medical board's order, courts must accord
    due deference to board's interpretation of technical and
    ethical requirements of its profession.
When reviewing a medical board's order, courts must accord due
    deference to the board's interpretation of the technical
    and ethical requirements of its profession.
    (No. 92-115 -- Submitted March 16, 1993 -- Decided July 7,
1993.)
    Appeal from the Court of Appeals for Franklin County, No.
91AP-746.
    In 1970, appellee, Pablo A. Pons, M.D., became licensed to
practice medicine in Ohio.  Since then, he has specialized in
obstetrics and gynecology.  On November 9, 1989, appellant,
Ohio State Medical Board ("board"), notified Dr. Pons that it
proposed to take disciplinary action against him for violations
of R.C. 4731.22(B)(6) (a departure from, or failure to conform,
to minimal standards of care) and former R.C. 4731.22(B)(15)
and its successor former R.C. 4731.22(B)(14)1 (violations of
medical ethics) in his treatment of a woman referred to as
"Patient 1."
    On January 30, 1990, a hearing was held before a hearing
officer with regard to the board's allegations.  The testimony
and exhibits received at this proceeding and as noted in the
findings of fact, revealed that Dr. Pons was the treating
physician of Patient 1 from around 1973 to March 26, 1984.
Sometime in 1976, Dr. Pons began a sexual and emotional
relationship with her.  This relationship lasted until 1983.
    Dr. Pons first saw Patient 1 in 1973, when he had been
called as a consult by her family physician to perform a
therapeutic abortion for her.  In large part, the medical
indication for the abortion was Patient 1's severe anxiety,
anxiety which arose from the birth of a previous child with
Down's Syndrome.  Dr. Pons was aware of this previous history
of psychiatric problems, including Patient 1's treatment and

subsequent hospitalization for these problems.

Prior to the beginning of their sexual relationship, Dr. Pons continued to treat Patient 1 for periods of depression and anxiety. At one point, in 1975, Dr. Pons counseled Patient 1 and her husband regarding their marital difficulties.

From 1974 to March 1984, Dr. Pons served as Patient 1's exclusive physician. He treated her for all her gynecological problems. He also provided non-gynecological medical care, such as treatment for back pain (severe enough to warrant hospitalization), and the removal of a mole or cyst from Patient 1's shoulder because Patient 1 refused to see other physicians.

When Patient 1 became pregnant with his child in 1983, Dr. Pons ended his sexual relationship with her, yet continued to professionally treat her throughout the pregnancy, serving as her attending obstetrician at the birth. Dr. Pons terminated his professional relationship with Patient 1 in March 1984. At this time, Patient 1 was exhibiting severe depression and Dr. Pons recommended psychiatric treatment.

Expert medical testimony was also provided. The expert witness, Dr. George P. Leicht, opined that Dr. Pons' overall care departed from the minimum standards of care of similar practitioners under the same or similar circumstances because the sexual relationship placed Dr. Pons in a very compromising position in which, as an objective individual, he would have difficulty in rendering appropriate guidance and care.

In addition, Dr. Leicht believed Dr. Pons violated several provisions of the American Medical Association Principles of Medical Ethics for his failure to deal objectively and honestly with the patient and exhibiting a lack of respect for her dignity. Also, Dr. Pons failed to adhere to ethical principles when he neglected to seek a consultation regarding Patient 1's apparent psychiatric problems.

After hearing this evidence, the hearing examiner concluded that Dr. Pons had violated R.C. 4731.22(B)(6), (14) and (15). He filed his report and recommendations to that effect. After considerable discussion, the board approved and confirmed the findings of fact and conclusions of law, yet adopted an amended order. The board's order revoked Dr. Pons' certificate to practice medicine and surgery, stayed the revocation, and indefinitely suspended his certificate for not less than one year, subject to conditions.2

Pursuant to R.C. 119.12, Dr. Pons filed an administrative appeal to the Franklin County Common Pleas Court. The common pleas court affirmed, finding that the board's order was supported by reliable, probative and substantial evidence, and was in accordance with law. Upon further appeal, the court of appeals vacated the judgment of the common pleas court and remanded the cause to the board with instructions that the finding as to violations of R.C. 4731.22(B) be reversed and the disciplinary action dismissed.

The cause is now before this court pursuant to the allowance of a motion to certify the record.

Porter, Wright, Morris & Arthur, William M. Todd and Terri-Lynne B. Smiles, for appellee.

Lee I. Fisher, Attorney General, Susan C. Walker and Diane

M. Weaver, Assistant Attorneys General, for appellant.

Katrina Miller English, urging reversal for amicus curiae, Ohio State Medical Association.

David Orentlicher, urging reversal for amicus curiae, American Medical Association.

David Goldberger and Robin Thomas, urging reversal for amici curiae, Ohio National Organization for Women, Citizen Action, Committee Against Sexual Harassment, Ohio Coalition on Sexual Assault, Project Woman, Senator Linda Furney, and Representative Raymond Miller.

Francis E. Sweeney, Sr., J.   In an appeal from a medical board's order, a reviewing trial court is bound to uphold the order if it is supported by reliable, probative, and substantial evidence, and is in accordance with law.  R.C. 119.12; In re Williams (1991), 60 Ohio St.3d 85, 86, 573 N.E.2d 638, 639.  The appellate court's review is even more limited than that of the trial court.  While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court.  The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.  Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the medical board or a trial court.  Instead, the appellate court must affirm the trial court's judgment.  Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 260-261, 533 N.E.2d 264, 266.  See, also, Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn. (1992), 63 Ohio St.3d 705, 707, 590 N.E.2d 1240, 1241.

Moreover, when reviewing a medical board's order, courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession. The policy reason for this was noted in Arlen v. State (1980), 61 Ohio St.2d 168, 173, 15 O.O.3d 190, 194, 399 N.E.2d 1251, 1254-1255:  "'* * *  The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of [people] equipped with the necessary knowledge and experience pertaining to a particular field.  * * *'"  (Quoting Farrand v. State Med. Bd. [1949], 151 Ohio St. 222, 224, 39 O.O. 41, 42, 85 N.E.2d 113, 114.)

Thus, the narrow issue before us today is to determine whether the appellate court correctly determined that the trial court abused its discretion in affirming the board's decision. For the following reasons, we hold that it did not. Accordingly, we reverse its decision.

I

The board concluded that the acts, conduct, and/or omissions of Dr. Pons fell below the minimum standards of care in violation of R.C. 4731.22(B)(6):  "A departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established."  The board never alleged that Dr. Pons' surgical skills were remiss or

that he lacked basic medical knowledge.  However, the board felt that the care a doctor renders to a patient includes more than just procedures performed or medications prescribed.  The overall care consists of the entire treatment relationship between the physician and patient.

In finding that Dr. Pons' overall care of Patient 1 was deficient, the board specifically found that Dr. Pons exhibited extremely poor medical judgment by entering into an emotional and sexual relationship with Patient 1 when he had reason to believe she was in a vulnerable, unstable, emotional state. The basis of this belief was that the sexual relationship began after Dr. Pons had received over one year's worth of complaints from Patient 1 of depression, anxiety, and marital discord. Additionally, he knew of her previous psychiatric hospitalization, he had prescribed anti-depressants for her, and he had counseled Patient 1 and her husband for their marital difficulties.  Dr. Pons knew, or should have known, that Patient 1 placed a great deal of trust in him, and that by entering into an emotional relationship with her this was likely to be detrimental to Patient 1's already unstable condition.  In doing so, Dr. Pons was not acting in Patient 1's best interest.

Also, the board determined that Dr. Pons failed to maintain the level of objectivity that minimal standards of care dictate by advising Patient 1 on various forms of birth control while engaging in a sexual relationship with her, thus serving his own personal desire that she not become pregnant with his child.  In addition, he lacked objectivity when he failed to insist she see specialists for her back pain and psychiatric care or counseling for her marital problems. Indeed, the board felt Dr. Pons took personal advantage of the fact that Patient 1 and her husband were having marital difficulties, an intimate fact learned through the professional relationship.

A medical disciplinary proceeding is a special statutory proceeding conducted by twelve persons, eight of whom are licensed physicians. R.C. 4731.01.  Thus, a majority of the board members possess the specialized knowledge needed to determine the acceptable standard of general medical practice. In re Williams, supra, at 87, 573 N.E.2d at 640.  Hence, the medical board is quite capable of interpreting technical requirements of the medical field and quite capable of determining when conduct falls below the minimum standard of care.  Arlen, supra, at 173, 15 O.O.3d at 194, 399 N.E.2d at 1254.

Dr. Pons' testimony, Patient 1's medical records, and the expert witness' testimony support the board's finding that Dr. Pons failed to conform to minimal standards of care.  The common pleas court, finding reliable, probative, and substantial evidence existed in the record, properly upheld the board's order.  The appellate court incorrectly found an abuse of discretion and improperly substituted its judgment for those of the board and the trial court on this finding.

II

The board also found Dr. Pons' behavior violated R.C. 4731.22(B)(14) and (15).  R.C. 4731.22(B)(14) and (15) authorize the board to discipline physicians for violations of

ethical standards adopted by national professional organizations such as those promulgated by the American Medical Association ("AMA").

The specific provisions Dr. Pons was charged with violating include Sections 1, 4, 6, and 8 of the AMA Principles of Medical Ethics in effect until July 1980, and Sections I, II, and IV of the AMA Principles of Medical Ethics in effect after July 1980. These provisions require a physician to provide competent medical service with compassion and respect for human dignity, deal honestly and objectively with a patient, uphold the dignity and honor of the medical profession, seek consultation where appropriate, and safeguard the public against physicians deficient in moral character.

The board concluded that Dr. Pons' conduct was neither honorable nor ethical. The board believed that the necessity of physician objectivity underlies all the enumerated provisions. Where there is a lack of objectivity there can be no assurance that the doctor is acting in the patient's best interest.

In addition, Dr. Pons' conduct was deceitful because he used information acquired through the relationship to his own personal advantage. The board felt it was implausible that Dr. Pons recommended marriage counseling after beginning his sexual relationship with Patient 1.

The board also believed Dr. Pons was obligated to obtain a consultation with a mental health specialist or insist that Patient 1 accept a referral for these problems.

The board also determined Dr. Pons failed to uphold the dignity and honor of his profession by maintaining this dual relationship and exploiting Patient 1's trust.

We find the board was well within its statutory authority and had the discretion to weigh the evidence and make the decision that Dr. Pons violated the medical profession's Code of Ethics and would be sanctioned pursuant to R.C. 4731.22(B)(14) and (15). Cf. Leon v. Ohio Bd. of Psychology (1992), 63 Ohio St.3d 683, 687, 590 N.E.2d 1223, 1226: "It takes no citation of authority to safely state that sexual relations between any professional and a client * * * are universally prohibited by the ethical regulations of practically every profession."

In view of the foregoing, we uphold the order of the medical board. Accordingly, the judgment of the court of appeals is reversed.

Judgment reversed.

Moyer, C.J., A.W. Sweeney, Douglas, Wright and Resnick, JJ.,concur.

Pfeifer, J., dissents.


FOOTNOTES:
1. Pursuant to amendments to R.C. Chapter 4731, the section numbers of this provision have changed at least four times since its enactment in 1967.
2. The hearing officer recommended an indefinite suspension for not less than two years.

Pfeifer, J., dissenting. I dissent from the majority's decision. The court of appeals correctly found that the trial court abused its discretion in affirming the Ohio State Medical

Board's decision to suspend Dr. Pons for one year.

We grant the medical board the power to discipline doctors in this state, trusting the board more than the courts to be able to determine what constitutes acceptable medical practice. While we have granted the board great discretion, there is a limit to what it can do. We do not require Ohio's doctors to give up all their due process rights in order to practice medicine in Ohio. Orders of the board must be supported by reliable, probative and substantial evidence, and must be in accordance with the law.

In this case, the board went beyond its statutory constraints. Dr. Pons had engaged in a consensual sexual relationship with a patient, and the board found that to be objectionable. Since there is no prohibition of such activity in the Ohio Revised Code, the board was forced to become creative in order to effectively vent its moral outrage. It did so with all the subtlety of the proverbial eight-hundred-pound gorilla that it has become.

The board forced square pegs into round holes, first claiming that Dr. Pons failed to conform to "minimal standards of care of similar practitioners under the same or similar circumstances." As it did in so much of the case against Dr. Pons, the board relied not on facts but on inferences stacked on top of inferences. There was no testimony from Patient 1. There was no testimony from any patient who received any substandard care from Dr. Pons. All of the medical care Dr. Pons administered to Patient 1 was appropriate and met applicable medical standards, and the board did not contend otherwise. Dr. Pons testified that his medical judgment was not clouded by his personal involvement with Patient 1. However, the board conclusorily determined that Dr. Pons' relationship with Patient 1 "clouded Dr. Pons' judgment and caused him to lose his objectivity." However, there was nothing in the record or in the history of Dr. Pons' treatment of Patient 1 which indicated that he actually did use poor medical judgment. The board's determination raises the question as to how any doctor could ever treat a family member or friend without violating R.C. 4731.22(B)(6).

Dr. Pons also supposedly fell below the minimal standards of care by having a "sexual relationship with a married patient who he had reason to believe was suffering from psychiatric, psychological, or emotional problems." Patient 1 was not "Sybil," as the board would like to portray her. There was some evidence that she occasionally was depressed and suffered some anxiety during the course of their affair. There was no evidence presented that any such problems were serious enough to merit treatment. What is more interesting is the board's inclusion of the word "married" in the description of what Dr. Pons did wrong. Why is it relevant that the patient with whom Dr. Pons had his relationship was married? Is the board saying that if Patient 1 had not been married that Dr. Pons' behavior would have been acceptable? If the board is going to start suspending adulterous doctors, this nation is going to have a bigger health care problem than we thought.

The board also found that Dr. Pons' behavior violated R.C. 4731.22(B)(14) and (15) by breaching the AMA's ethical principles. However, those principles, at the time relevant

herein, did not prohibit consensual sexual relationships between doctors and their patients. Not until 1991, long after the board heard this case, did the AMA's Council on Ethical and Judicial Affairs announce for the first time in an article entitled "Sexual Misconduct in the Practice of Medicine" (Nov. 20, 1991), 266 J.A.M.A. 2741, 2745, that sexual contact or a romantic relationship concurrent with the physician-patient relationship is unethical.

Since there was no prohibition of such activity, the board again had to twist the law and the facts to suit its decision, claiming that Pons was deceitful and exhibited a lack of objectivity, and a lack of dignity in his care of Patient 1. The majority opinion backs up the board by citing troubling dicta from Leon v. Ohio Bd. of Psychology (1992), 63 Ohio St.3d 683, 687, 590 N.E.2d 1223, 1226: "It takes no citation of authority to safely state that sexual relations between any professional and a client * * * are universally prohibited by the ethical regulations of practically every profession."

It very well ought to require a citation of authority to strip a person of his ability to practice his profession. In Leon, there was a specific Ohio Administrative Code section prohibiting sexual contact between a psychologist and a client. Thus, in Leon there was authority for the discipline given. Here, there was not, and all of the machinations of the board cannot change that.

I find the board's action to be unlawful and to be based on no evidence. The trial court therefore abused its discretion in upholding the board. I would thus affirm the court of appeals.