[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} Appellant, Elbireh Empire, Inc., dba Madisonville Drive-Thru, appeals from a judgment of the Franklin County Court of Common Pleas affirming the order of appellee, Ohio Liquor Control Commission ("commission"), that affirmed an order of the superintendent of the Ohio Division of Liquor Control ("division"), denying appellant's 2000-2001 renewal application for a Class C-1-2, D-6 liquor permit.
 {¶ 2} Appellant is the operator of the Madisonville Drive-Thru, located at 6404 Madison Road, Cincinnati, Ohio. The local legislative authority objected to appellant's 2000-2001 renewal application of the liquor permit. On November 17, 2000, the division held a hearing on the issue of renewal. By letter mailed January 26, 2001, the superintendent of the division notified the permit holder that it was denying its 2000-2001 renewal application based upon the following grounds:
 {¶ 3} "1) The place for which the permit is sought is so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace, or good order would result from the ownership and operation of business by the applicant Elbireh Empire, Inc. and/or its manager/operator Mengistu [sic] Haile and/or Ghion, Inc. and/or Mengistu [sic] Haile by and through Ghion, Inc. and renewal of the captioned permit and operation thereunder by these parties. R.C. §§4303.292(A)(2)(c), 4303.27, 4303.11, 4303.12, and 4303.182.
 {¶ 4} "2) The applicant Elbireh Empire, Inc. and/or its manager/operator Mengistu [sic] Haile and/or Ghion, Inc. and/or Mengistu [sic] Haile by and through Ghion, Inc. have owned and operated the liquor permit business in a manner that demonstrates a disregard for the laws, regulations, or local ordinances of this State. R.C. §§4303.292(A)(1)(b), 4303.27, 4303.11, 4303.12, and 4303.182.
 {¶ 5} "3) The applicant has allowed others not named on such permit, namely, Mengistu [sic] Haile and/or Ghion, Inc. to engage in the retail sale of alcoholic beverages in furtherance of an independent business without consent or approval by the Division of Liquor Control and as prohibited by law. R.C. §§ 4303.29(A), 4303.27, 4303.11, 4303.12, and 4303.182.
 {¶ 6} "4) The applicant is not the sole owner and operator of a retail store at the captioned location and is not engaged in the retail sale of alcoholic beverages as restricted by law. R.C. §§4303.27, 4303.11, 4303.12, and 4303.182.
 {¶ 7} "5) The applicant does not have sole and exclusive tenancy rights at the captioned location for purposes of carrying on the sole ownership and operation of a retail store engaged in the sale of alcoholic beverages as restricted by law. R.C. §§ 4303.27, 4303.11,4303.12, and 4303.182.
 {¶ 8} "6) The permit holder has misrepresented material facts to the Division on the pending 2000-2001 renewal application. R.C. § 4303.292(A)(1)(c)."
 {¶ 9} Appellant appealed to the commission, which conducted a hearing on December 5, 2001. By order mailed December 19, 2001, the commission issued an order affirming the decision of the superintendent of the division.
 {¶ 10} On January 4, 2002, appellant filed a notice of appeal with the trial court, pursuant to R.C. 119.12, from the order of the commission. The trial court filed a decision on August 19, 2002, affirming the order of the commission. The decision of the trial court was journalized by judgment entry filed on October 9, 2002.
 {¶ 11} On appeal, appellant sets forth the following single assignment of error for review:
 {¶ 12} "The Franklin County Common Pleas Court abused its discretion in finding the Ohio Liquor Control Commission's decision was supported by reliable, probative and substantial evidence."
 {¶ 13} In Big Bob's, Inc. v. Ohio Liquor Control Comm., Franklin App. No. 02AP-708, 2003-Ohio-418, this court noted the applicable standards of review involving an appeal from an administrative agency under R.C. 119.12 as follows:
 {¶ 14} "Under R.C. 119.12, when a common pleas court reviews an order of an administrative agency, the common pleas court must consider the entire record to determine whether the agency's order is supported by reliable, probative and substantial evidence and is in accordance with law. * * *
 {¶ 15} "The common pleas court's `review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court "must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof."' * * * In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. * * *
 {¶ 16} "An appellate court's review of an administrative decision is more limited than that of a common pleas court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621 * * *. In Pons, the Ohio Supreme Court noted: `While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals many not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment.' Id. An appellate court does however have plenary review of purely legal questions." * * * (Citations omitted.)
 {¶ 17} Pursuant to R.C. 4303.271, a permit holder is entitled to renewal of its liquor permit unless good cause exists to reject the renewal application. Marciano v. Ohio Liquor Control Comm., Franklin App. No. 02AP-943, 2003-Ohio-2023. R.C. 4303.292 sets forth the grounds under which the division may deny a renewal application, and that statute states in part:
 {¶ 18} "(A) The division of liquor control may refuse to * * * renew * * * any retail permit issued under this chapter if it finds:
 {¶ 19} "(1) That the applicant, any partner, member, officer, director, or manager thereof, or any shareholder owning ten per cent or more of its capital stock:
 {¶ 20} "* * *
 {¶ 21} "(b) Has operated liquor permit businesses in a manner that demonstrates a disregard for the laws, regulations, or local ordinances of this state or any other state;
 {¶ 22} "(c) Has misrepresented a material fact in applying to the division for a permit;
 {¶ 23} "* * *
 {¶ 24} "(2) That the place for which the permit is sought:
 {¶ 25} "* * *
 {¶ 26} "(c) Is so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace, or good order would result from the issuance, renewal, transfer of location, or transfer of ownership of the permit and operation thereunder by the applicant."
 {¶ 27} Appellant contends the evidence presented was neither probative nor substantial as to the issue of whether the premises caused substantial interference with public decency, sobriety, peace or good order. Although not citing any specific testimony, appellant argues in general terms that the hearing evidence was speculative, and subject to varying opinions.
 {¶ 28} At the commission hearing, 13 witnesses voiced objections to the renewal application, including Cincinnati Police Officers John Neal, Matt Cornacchione, and Greg Lawton, local businessman Stephen Overbeck, and a number of local residents, including members of the Madisonville "Citizens on Patrol" organization, and the Madisonville Community Council.
 {¶ 29} Officer Neal, who was previously assigned to the "district two" criminal apprehension team, testified that he responded to frequent complaints involving the location, and made numerous arrests of persons loitering on the property, including individuals smoking marijuana and drinking open containers of alcohol. He described the premises as a "thorn in my side as a police officer because I've invested most of my time to that area alone." (Tr., at 13.)
 {¶ 30} The Madisonville Drive-Thru has a drive-up window on the front of the building, and a walk-up window on the side. Officer Neal described how one individual would constantly stand against the wall near the drive-up window, asking individuals in the cars "that come through the drive-thru if they need any marijuana or crack cocaine." (Tr., at 15-16.) Officer Neal has arrested individuals for public indecency, disorderly conduct, intoxication, obstructing traffic and walking out into the street. He has observed gang graffiti written on the building, people urinating in the parking lot near the walk-up window, and patrons throwing trash on the lot and in the street. One evening, individuals on the premises began fighting, and the fight eventually spread out into the street. He noted that some individuals, after purchasing drugs and alcohol on the premises, would congregate at a nearby railroad track area. During the hearing, Officer Neal identified pictures showing trash piled up on the side of the building. The officer frequently observed juveniles at the site in the evening; the juveniles had tobacco products, and stated they obtained them from the store.
 {¶ 31} Officer Neal testified regarding arrests made on or near the premises. One such arrest involved an individual named Jason Lang, whom the officer observed standing against the drive-thru window; the officer believed a drug transaction was taking place, and he dispatched some uniformed police officers. When the officers arrived, Lang ran toward the railroad tracks, where he was apprehended with 8.3 grams of crack cocaine. Officer Neal stated that approximately 80 to 120 arrests a month are made in the vicinity of the district, and "at least 50 percent of those arrests came from this area or on the property itself." (Tr., at 37.) He stated that the drive-thru is a "big strain" on police resources. (Tr., at 40.) According to the officer, individuals involved in drug transactions use the drive-thru because they need "high-traffic volume" and a "safety net." (Tr., at 83.) Regarding the issue of a safety net, he testified that:
 {¶ 32} "* * * [W]hen the police come up, if they are just standing there and the police stop them, they say I'm buying * * *. They walk up and buy a bag of potato chips or a two-cent piece of candy or something. That way the police have no right to stop them. At least that's what they want to project to the police." Id.
 {¶ 33} Officer Cornacchione similarly testified that problems at the drive-thru include trash, large crowds loitering, drug usage, and underage individuals purchasing alcohol. According to the officer, no other establishment in the area causes more trouble than the Madisonville Drive-Thru, and he described the premises as a strain on police resources.
 {¶ 34} Sergeant Lawton testified that the premises contributed to juvenile delinquency in the area, including underage alcohol and tobacco use. He stated that the police force has a "limited amount of resource in that unit and when you have to expend 50 percent of that for half a day in that area * * * it's a tremendous strain of resources." (Tr., at 97.)
 {¶ 35} Stephen Overbeck owns Overbeck Auto Services, located at 6403 Madison Road. Overbeck's business is situated directly across the street from the drive-thru. Overbeck has observed a fight, open beer containers, and bottle breaking contests at the location. Overbeck cleans up trash every morning left by patrons of the permit premises, and he stated that it takes him between 15 to 30 minutes to remove trash in his lot and a building next door. According to Overbeck, his customers are "afraid to come down there." (Tr., at 106.) He testified that he has observed local bus patrons wait on his side of the street "until the bus comes, and then the bus driver will wait for them because of the trafficking that goes on from the drive-in down to this bus stop facility." (Tr., at 107.)
 {¶ 36} Rand Richard, a member of the Madisonville "Citizens on Patrol," testified that patrol members go by the premises at least three times a week. He stated that litter is an "extreme problem" at the location. (Tr., at 111.) Richard noted that a number of vehicles go through and "somebody will flag them down in front of the drive-in." Id. An individual will get in the car and they drive around the block and then return. Richard once observed a "transaction" between people in which money was exchanged; later, Richard and other members of the patrol found a small bag of marijuana in the parking lot of the premises.
 {¶ 37} Kim Eppens lives in the vicinity of the Madisonville Drive-Thru, and she has two high school-age children. Eppens testified that she objects to the renewal of the permit because of concerns that the permit premises is known to local high school students as "the place to go if you want to purchase alcohol and you are underage." (Tr., at 123.) Eppens is also a member of Citizens on Patrol, and she related an incident in which an underage juvenile walked up to the walk-up window of the drive-thru and purchased a beer. When the youth saw Eppens, he said, "you busted me. I'm underage. I don't want any trouble. I'm putting it back." Id. Eppens has observed unruly conduct, littering, public urination at the establishment, as well as suspected drug deals. There was also evidence presented during the testimony of Officer Neal that an employee of the permit premises has been convicted on two occasions for selling alcohol to minors.
 {¶ 38} Suzanne Micheli, a local resident, is president of the Madisonville Community Council. Micheli testified about observing littering, loitering, drunkenness, public urination, open flasks, and known drug dealers at the site. She once observed an individual exposing himself on the street. She also related that "[w]e have been assaulted in our vehicle by clients who leave the drive-thru. They go up onto the trestle. They throw rocks at cars going by." (Tr., at 128.)
 {¶ 39} A number of other local residents testified concerning similar problems they had observed at the premises, including littering, loitering, crowd problems, drug dealing, and public urination. One of the witnesses, Roy Miller, testified about observing an underage person purchase cigarettes from the premises, and on another occasion an individual exposing himself.
 {¶ 40} Pursuant to R.C. 4303.292, the commission "may take into consideration the adverse effect on the neighborhood that the license renewal may have." Abuzahrieh Co. v. Liquor Control Comm. (July 22, 1999), Cuyahoga App. No. 74556. Thus, "[i]t has been held that `environmental conditions alone, if extreme enough, can constitute good cause to deny renewal of a permit.' " Double Duce, Inc. v. Liquor Control Comm. (Sept. 28, 2000), Franklin App. No. 99AP-1284, quoting Davis v. Liquor Control Comm. (June 8, 1995), Franklin App. No. 94APE12-1779. Moreover, in interpreting R.C. 4303.292(A)(2), location, rather than the permit holder's action or inaction, is the controlling factor, and "Ohio courts have not hesitated to uphold the Liquor Control Commission's decision to refuse to renew a liquor permit based on environmental factors through no fault of the permit holder." Double Duce, supra. See, also, 3M, Inc. v. Liquor Control Comm. (Jan. 25, 2001), Franklin App. No. 00AP-529 (noting that Ohio "courts have held that the adverse affects of the premises and its patrons on its surroundings and law enforcement are sufficient alone for rejection, regardless of the inside operation").
 {¶ 41} As stated above, in the present case a number of witnesses testified as to drug usage, the sale of alcohol and tobacco to minors, loitering, littering, fighting, public urination and public indecency occurring on or in the vicinity of the permit premises, and there was further testimony regarding the strain on police resources related to the location. Upon review, this court finds there was substantial evidence to establish a "connection between the permit premises and adverse effects upon the surrounding area." Marciano, supra, at ¶ 29. Accordingly, the trial court did not abuse its discretion in affirming the commission's finding that there was reliable, probative and substantial evidence that the permit establishment was so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace or good order would result from renewal of the permit.
 {¶ 42} Inasmuch as there was good cause to support denial of the application for renewal based upon R.C. 4303.292(A)(2)(c), we need not consider whether any other grounds existed to support the trial court's decision affirming the order of the commission. We would note, however, that a review of the record indicates that there was ample evidence in the record to support the trial court's alternative finding that someone other than the person named in the liquor control permit was carrying on the day-to-day business, in violation of R.C. 4303.27.
 {¶ 43} Based upon the foregoing, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
TYACK and BOWMAN, JJ., concur.