DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Larry Heydon applied to the Division of Financial Institutions of the Ohio Department of Commerce for a license to be a mortgage loan officer. The Division denied his application because he had been convicted of disorderly conduct in 1992, convicted of two charges of theft in 1994, and, according to the Division, his character and general fitness did not "command the confidence of the public and warrant the belief that his business [would] be operated honestly and fairly in compliance with the purposes of . . . the Ohio Mortgage Broker Act." Mr. Heydon filed a handwritten notice of appeal with the Common Pleas Court and a *Page 2 
photocopy of that handwritten notice with the Division. The Division moved to dismiss his appeal, arguing that the photocopy he filed with the Division was not a "notice of appeal" as required by Section 119.12
of the Ohio Revised Code and that the handwritten notice of appeal he filed with the Common Pleas Court was not "a copy of such notice of appeal" as required by that same statute. The Common Pleas Court denied the Division's motion to dismiss. On the merits, Mr. Heydon argued that he had proven by a preponderance of the evidence that his activities and employment record since his convictions showed that he is honest, truthful, and of good reputation and that there was no basis in fact for believing that he would again commit a theft offense. The Common Pleas Court agreed with Mr. Heydon and reversed the decision of the Division. The issues before this Court are whether Mr. Heydon properly invoked the jurisdiction of the Common Pleas Court and, if so, whether that Court abused its discretion by reversing the decision of the Division. This Court affirms the decision of the Common Pleas Court because Mr. Heydon's filing of his hand written notice of appeal with that court and a photocopy of that notice with the Division properly invoked the Common Pleas Court's jurisdiction and because the Common Pleas Court did not abuse its discretion by determining that Mr. Heydon had carried his burden of demonstrating by a preponderance of the evidence that his activities and employment record since his convictions showed that he is honest, truthful, and of *Page 3 
good reputation and that there was no basis in fact for believing that he would again commit a theft offense.
 I. {¶ 2} The first incident relied upon by the Division in its denial of Mr. Heydon's license application occurred in 1992. Mr. Heydon testified before the Division's Hearing Officer that he had stopped at a restaurant on his way home from a party, but discovered that the restaurant was closed. Because he did not think he could wait until he got home, he went behind some bushes and urinated. He was seen by a police officer and was charged with public indecency. The charge was amended to disorderly conduct, to which he apparently pleaded guilty.
 {¶ 3} In 1994, Mr. Heydon pleaded guilty to two misdemeanor theft offenses. He testified before the Hearing Officer that two friends had asked him to drive them to a girlfriend's house and wait for them. He claimed that they returned to his car with a couple of bags and told him to drive away. Apparently the bags contained stolen items worth more than $500. They were stopped by police, and he was charged with a felony theft offense. He testified that he pleaded guilty to two misdemeanor theft offenses because, despite his position that he had not known what his friends were doing, the friends claimed that he had been involved in the thefts.
 {¶ 4} Mr. Heydon worked for Brown Derby Restaurants for four years and for TruGreen ChemLawn for five years. In 1997, he received an Associate Degree *Page 4 
of Applied Science in Criminal Justice Technology from the University of Akron and unsuccessfully tried to find a job as a police officer. At some point, he left TruGreen and started his own landscaping business. In June 2001, he became a loan officer with Aegis Lending. He continued to operate his landscaping business while he worked as a loan officer.
 {¶ 5} Mr. Heydon did not need a license to work as a loan officer with Aegis, at least when he first took that job. In May 2003, he applied to the Division for a loan officer's license, but it is unclear whether he needed the license to continue to do what he had previously been doing for Aegis or whether he wanted to do something else.
 {¶ 6} The Loan Officer Application included a number of questions, including one that asked whether the applicant would hold other employment while working as a loan officer:
 3. Will you hold any other job (including self-employment) while you are employed as a mortgage loan officer?
 If the answer is yes, furnish details.
Mr. Heydon responded no. Another question asked about criminal convictions:
 5. Have you or has any company for which you have been an officer, or more than 5% owner or director, ever been convicted of any criminal offense? Exclude minor misdemeanor traffic and parking offenses. (DUIs and DWIs are criminal offenses.)
 If yes, submit a detailed explanation of the facts and circumstances, which gave rise to each charge and a certified *Page 5 
copy of the journal entry evidencing the disposition of each charge.
(Emphasis in original.) Mr. Heydon responded no, but, in the space provided for an explanation of a positive response, wrote: "previous record expunged."
 {¶ 7} The Division apparently conducted an investigation of Mr. Heydon' s background and, on May 21, 2003, requested information from him regarding his 1992 and 1994 offenses. He provided the requested information on May 29, 2003, along with an explanation that the offenses "should have been expunged," but that he "[n]ow" saw that "they are still showing on my record."
 {¶ 8} On January 23, 2004, the Division notified Mr. Heydon that it intended to deny his requested license. The only reasons given were his 1992 and 1994 offenses, which the Division wrote caused it to determine that he had "not proven that he is honest, truthful, and of good reputation, and that there is no basis in fact for believing that he will not commit another criminal offense involving theft or any criminal offense involving money or securities." The Division also wrote that, as a result of the offenses, Mr. Heydon's "character and general fitness do not command the confidence of the public and warrant the belief that the business will be operated honestly and fairly in compliance with the purposes of the Ohio Mortgage Broker Act."
 {¶ 9} Mr. Heydon appealed, and a hearing was held before a Department of Commerce Hearing Officer. Mr. Heydon was the only witness who testified. *Page 6 
He explained the circumstances surrounding his 1992 and 1994 offenses. He also explained his efforts to have the offenses expunged:
 I met with an attorney, the year `95, because I had started college to be a police officer. And they had mentioned that before I could get in any of the departments, that, you know, a previous record wasn't going to be very good to me. So I met with an attorney and paid the money to have it expunged, and then, you know, to find out that it wasn't taken care of. . . .
He further explained that he had attempted to contact the attorney again, only to find that he was no longer in practice. He testified that he had not known until he applied for his loan officer license that the expungement had not been taken care of, although he also acknowledged having known in 1997 that, at least by then, his convictions had not been expunged. It was unclear what led him to believe that they had been expunged between 1997 and 2003.
 {¶ 10} Mr. Heydon testified that he no longer associated with the two people with whom he had been involved in the 1994 theft offenses. Finally, he acknowledged that he still had a landscaping business, but that he did not consider himself self-employed. His explanation of why he did not consider his landscaping business employment or self-employment was confusing. According to him, he did not make enough money from that business "to file income taxes on it." Presumably, he meant that the business was not profitable.
 {¶ 11} Mr. Heydon submitted a number of exhibits to the Hearing Officer. One was a letter from his Aegis branch manager who wrote positively about Mr. Heydon's integrity: *Page 7 
 I have worked for the company now owned by Aegis Mortgage Corp. since February of 1992. During that time I have managed and worked with hundreds of loan officers. Of those hundreds, one stands apart in terms of success, professionalism and integrity: Larry Heydon.
An e-mail from an Aegis Regional Vice President also credited Mr. Heydon for his honesty:
 During his tenure, he has received many awards, and as we routinely survey customers in an effort to judge [their] satisfaction, he has also received many compliments from them. Those comments always state that Larry went above and beyond [their] expectations, that he was honest and delivered what he said he would, and that they would refer friends and relatives to him because they know he would treat them right.
There were also a number of testimonials from customers. Although none of them commented directly on his honesty, they did credit him with providing a positive experience in regard to their loan transactions.
 {¶ 12} The Hearing Officer issued a Report and Recommendation in which he suggested that Mr. Heydon's application be denied. In particular, he found that Mr. Heydon had not truthfully answered questions three and five on his license application and that his theft offenses were "hard to justify in relationship to the Respondent's position as a loan officer entrusted with confidential customer information."
 {¶ 13} Mr. Heydon objected to the Hearing Officer's Report and Recommendation, but the Division adopted it. Mr. Heydon then filed a *Page 8 
handwritten notice of appeal with the Common Pleas Court and a photocopy of that handwritten notice of appeal with the Division.
 {¶ 14} The Division moved for dismissal of Mr. Heydon's appeal, and the Common Pleas Court denied that motion. On the merits, the court reversed the Division's decision and directed it "to approve the application of Heydon to receive his Mortgage Loan Officer License." The Division appealed to this Court.
 II. {¶ 15} The Division has assigned two errors on appeal. First, it has argued that the Common Pleas Court incorrectly denied its motion to dismiss Mr. Heydon's appeal of the Division's decision. Second, on the merits, it has argued that the trial court incorrectly reversed the Division's determination not to grant Mr. Heydon a mortgage loan officer license.
 III. A. {¶ 16} The manner in which a party may appeal a licensing decision of an administrative agency is provided in Section 119.12 of the Ohio Revised Code:
 Any party desiring to appeal shall file a notice of appeal with the agency setting forth the order appealed from and the grounds of the party's appeal. A copy of such notice of appeal shall also be filed by the appellant with the court. Unless otherwise provided by law relating to a particular agency, such notices of appeal shall be filed within fifteen days after the mailing of the notice of the agency's order. . . . *Page 9 
The Division has asserted that Mr. Heydon did not comply with Section 119.12 and that, as a result, the Common Pleas Court did not have jurisdiction over his appeal. According to it, Mr. Heydon was required to file the "original" of his notice of appeal with the agency and a "copy" of that original with the court. Instead, it has argued, he filed the "original" with the court and a "copy" with the agency.
 {¶ 17} The Ohio Supreme Court has held that, if a statute provides a right to appeal, a party wishing to perfect an appeal under that statute must strictly comply with conditions imposed by it. Holmes v. UnionGospel Press, 64 Ohio St. 2d 187, 188 (1980). A number of Ohio Appellate Courts have relied upon that holding in reaching the conclusion argued for by the Division in this case. See Mudgett v. Ohio State Bd. ofEmergency Med. Servs., 165 Ohio App. 3d 330 (2005); Berus v. Ohio Dept.of Admin. Servs., 10th Dist. No. 04AP-1196, 2005-Ohio-3384; Buchler v.Ohio Dept. of Commerce, 8th Dist. No. 78401, 2001 WL 792736 (July 12, 2001). A number of other Ohio Appellate Courts have rejected arguments similar to that made by the Division in this case. See Playmate Sch. andChild Care Ctr. v. Ohio Dept. of Job and Family Servs., 5th Dist. No. 2005-CA-55, 2005-Ohio-5937; Morrison v. Ohio Dept. of Ins., 4th Dist. No. 01CA13, 2002-Ohio-5986; Wheat v. Bd. of Embalmers and FuneralDirs., 2d Dist. No. 16918, 1998 WL 350902 (July 2, 1998). *Page 10 
 {¶ 18} According to the Division, Section 119.12 requires that an "original" notice of appeal be filed with the agency. That section, however, does not explicitly require the notice filed with the agency to be an "original." It only says that a "notice of appeal" must be filed with the agency. Although the Division has not clearly articulated it, its apparent position is that the legislature implicitly required the notice of appeal to be filed with the agency be an "original" by explicitly providing that the notice of appeal required to be filed with the court be a "copy": "A copy of such notice of appeal shall also be filed by the appellant with the court." See Wheat, at *3. Of course, "[h]ad the General Assembly intended for the filing of originals only, it could have included the word `original' in the statutory language."Id.
 {¶ 19} Arguing that the unmodified phrase "notice of appeal" means "original notice of appeal" invites an argument that the 15-day filing requirement also found in Section 119.12 applies only to the "original notice of appeal" to be filed with the agency and does not apply to the "copy" that is to be filed with the Common Pleas Court. The statute does not say that both the "notice of appeal" and the "copy of such notice of appeal" must be filed within 15 days. Rather, it only provides that "such notices of appeal" must be filed within 15 days. If the word "original" is implicit the first time "notice of appeal" is used, it would also be implicit when that phrase is used in connection with the 15-day filing requirement. Both the Second District Court of Appeals and the Fifth District *Page 11 
Court of Appeals relied upon this very argument to reach the conclusion that only the notice of appeal filed with the agency had to be filed within 15 days. Hayes v. Montgomery County Bd. of Commrs.,94 Ohio App. 3d 597, 600 (1994); State Med. Bd. of Ohio v. Brasseur, 5th Dist. No. 3171, 1986 WL 7735, at *2 (July 2, 1986). The Ohio Supreme Court, however, in Nibert v. Ohio Dept. of Rehab. and Corr, 84 Ohio St. 3d 100,102 (1998), reached the opposite conclusion:
 In construing a statute, R.C. 1.42 requires that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." Taken in its most logical context, the plural "notices of appeal" obviously encompasses both the notice of appeal and the copy of the notice of appeal referred to in the preceding sentences.
If the unmodified phrase "notices of appeal" in connection with the 15-day filing requirement includes both the "notice of appeal" and the "copy of such notice of appeal," then the "notice of appeal" that must be filed with the agency should be able to be either an "original" or a "copy" because both are "notices of appeal."
 {¶ 20} If this Court would read the word "original" into the statute even though it does not appear there, it would then have to determine what an "original notice of appeal" is. What makes one document an "original" and another a "copy"?
 {¶ 21} In this case, Mr. Heydon handwrote the notice of appeal he filed with the Court and photocopied that document to obtain the notice he filed with the agency. If, instead of photocopying it, he had copied it by hand, would it still be a copy, or would it be a second original? In Berus v. Ohio Dept. of Admin. *Page 12 Servs., 10th Dist. No. 04AP-1196, 2005-Ohio-3384, the Tenth District Court of Appeals concluded that "the phrase `copy of such notice' means an exact duplicate of the notice of appeal filed with the agency."Berus at ¶ 10. The statute, however, does not say that the "copy" must be an "exact copy" or a "photocopy." Id. It only says that it is to be a "copy." Id.
 {¶ 22} Most documents filed with courts now are produced by a printer attached to a computer. At oral argument, the Division asserted that printing the notice twice, signing both, and filing one with the agency and one with the court would not satisfy Section 119.12 because, while the one filed with the agency would be an "original," the one filed with the court would not be a "copy" because it would not be an exact duplicate of the "original." Again, however, the statute does not say that the "copy" must be an exact duplicate.
 {¶ 23} Among the definitions of the word "copy" is "any of a number of books, magazines, engravings, etc. printed from the same plates or having the same printed matter." Webster's New World Dictionary 307 (3d College ed. 1988). Perhaps every document printed on a printer attached to a computer is a "copy," and the "original," to the extent an "original" exists, is found on the computer's hard drive.
 {¶ 24} Also at oral argument, the Division suggested that what makes a document an original is the fact that it bears an "original" signature. Section 119.12, however, does not say that the notice filed with the agency must bear an *Page 13 
"original" signature or that the "copy" filed with the court may not bear an "original" signature. Rule 11 of the Ohio Rules of Civil Procedure provides that "[e]very pleading, motion, or other document shall be signed." Does that rule require an "original" signature and, if so, is it displaced by the requirement, which the Division has argued is implicit in Section 119.12 that the "copy" of the notice of appeal filed with the court not have an "original" signature? While arguing that Section 119.12 must be strictly enforced, the Division has asked this Court to determine that that section contains a lot of requirements that do not appear on its face.
 {¶ 25} In Wheat v. Bd. of Embalmers and Funeral Dirs., 2d Dist. No. 16918, 1998 WL 350902, the Second District Court of Appeals discussed the purpose of Section 119.12's filing requirements:
 The intent of R.C. 119.12 is to provide a procedure by which a party may appeal an administrative decision. The only requirement for initiating the appeal is the timely filing of a notice of appeal with the agency and a copy of the notice with the court. The ". . . purpose and function of a notice of appeal in Ohio practice, is to advise the tribunal which issued the order appealed from that it has lost some or all of its jurisdiction to proceed further and to direct it to prepare and transmit its record to the appellate court." . . . The purpose for timely filing the notice of appeal with the agency is to invoke the jurisdiction of the court to which the appeal is taken.
Wheat, at *3 (quoting Hayes, 94 Ohio App. 3d at 601). That purpose is satisfied by timely filing notices of appeal with the agency and the Common Pleas Court. It is the location at which a particular document is filed that determines whether it is the "notice of appeal" mentioned in Section 119.12 or the "copy of such notice" *Page 14 
also mentioned in that section rather than how those documents came into existence. The document filed with the agency, if it otherwise satisfies Section 119.12, is the "notice of appeal," and the document filed with the court, if it otherwise satisfies Section 119.12, is the "copy of such notice of appeal." Mr. Heydon timely filed a "notice of appeal" with the agency and timely filed a "copy of such notice of appeal" with the Common Pleas Court. Accordingly, the Court of Common Pleas had jurisdiction over his appeal, and the Division's first assignment of error is overruled.
 B. {¶ 26} The Division has argued that the Common Pleas Court abused its discretion by reversing its decision to deny Mr. Heydon's license application. The standard of review that a Common Pleas Court applies in an appeal under Section 119.12 of the Ohio Revised Code is set forth in that section:
 The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.
In Andrews v. Bd. of Liquor Control, 164 Ohio St. 275, 280 (1955), the Ohio Supreme Court wrote that the review contemplated by Section 119.12
is a "hybrid review . . . which is one neither strictly of law nor of law and fact. . . ." As *Page 15 
explained by the Supreme Court, the Common Pleas Court's review includes assessing the weight of the evidence that was before the agency:
 The court must read and consider all the evidence offered by both sides and must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence and the weight thereof.
Id. This Court's review of a Common Pleas Court's decision in a Section 119.12 appeal is limited to determining whether that court abused its discretion. Pons v. Ohio State Med. Bd, 66 Ohio St. 3d 619, 621 (1993).
 {¶ 27} Section 1322.04.1 of the Ohio Revised Code, at the time relevant to Mr. Heydon's application, provided that, in order for an applicant who was convicted of a theft offense to receive a license to be a mortgage loan officer, that applicant had to prove "by a preponderance of the evidence, that the applicant's activities and employment record since the conviction show that the applicant is honest, truthful, and of good reputation, and there is no basis in fact for believing that the applicant will commit such an offense again." The Division found that Mr. Heydon had not carried his burden of proof on that issue. The Common Pleas Court, in effect, determined that the Division's finding that Mr. Heydon had not carried his burden of proof was not supported by the weight of the evidence.
 {¶ 28} In its Order, the Common Pleas Court exhaustively reviewed the evidence that was before the Hearing Officer. The court determined that the Hearing Officer had incorrectly found that Mr. Heydon's response to question five on his application was evidence of dishonesty: *Page 16 
 Although his record was in fact not expunged, this does not amount to dishonesty. Heydon in fact answered "previous record expunged" which was only required if he had answered, "Yes" to Question 5. When he discovered his criminal record was not expunged, he supplied full disclosure of those records.
Mr. Heydon's response to question five was evidence of a lack of care in determining the true state of the facts regarding his effort to have his convictions expunged. The Common Pleas Court, however, did not abuse its discretion in determining that evidence of a lack of care is not evidence of dishonesty.
 {¶ 29} The Common Pleas Court also determined that the Hearing Officer had incorrectly found that Mr. Heydon's answer to question three was evidence of dishonesty:
 As to Question 3 that asked: Will you hold any other job (including self-employment) while you are employed as a mortgage loan officer? This question is somewhat ambiguous since it sounds like they are asking about something in the future when they [imply] they are asking something in the present (Are you holding any other job while you are employed as a mortgage loan officer?). Regardless, considering the question and Heydon's answer and explanation, this does not rise to dishonesty.
Neither the hearing officer nor the lawyer who represented the Division before the Hearing Officer asked Mr. Heydon if he intended to continue his landscaping business if he became a licensed loan officer. The Common Pleas Court did not abuse its discretion by determining that Mr. Heydon's answer to question three was not evidence of dishonesty.
 {¶ 30} As mentioned previously, the Hearing Officer specifically wrote that Mr. Heydon's theft offenses were "hard to justify in relationship to the *Page 17 
Respondent's position as a loan officer." The fact of those offenses, however, was not relevant to the question of whether he had carried his burden of proving that his activities and employment record since those offenses showed that he "is honest, truthful, and of good reputation, and there is no basis in fact for believing that the applicant will commit such an offense again." R.C. 1322.04.1. The only evidence that was before the Hearing Officer on this question was the evidence submitted by Mr. Heydon that supported a finding that he has been "honest, truthful, and of good reputation" since the time of his convictions. The Hearing Officer did not make a finding that that evidence was not credible.
 {¶ 31} This Court cannot hold that the Common Pleas Court abused its discretion in reversing the Division's denial of Mr. Heydon's application for a mortgage loan officer's license. The Division's second assignment of error is overruled.
 IV. {¶ 32} The Division's assignments of error are overruled. The judgment of the Common Pleas Court is affirmed.
Judgment affirmed.
 The Court finds that there were reasonable grounds for this appeal. *Page 18 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
 WHITMORE, P. J., CARR, J., CONCUR *Page 1