OPINION
{¶ 1} Appellants, Café Napoli Partnership, d.b.a. Café Napoli and Gennaro Russo, a partner in the partnership (collectively, "appellant"), appeal from a judgment of the Franklin County Court of Common Pleas affirming the decision of appellee, Ohio Liquor Control Commission ("commission") that affirmed the order of the Superintendent of the Division of Liquor Control ("division") denying appellant a D5-6 liquor permit in Boardman Township, Mahoning County, Ohio. Appellant assigns two errors: *Page 2 
 I. Appellee Failed to Establish by a Preponderance of the Evidence Good Cause for Failing to Renew Appellant's D5-6 Permits.
 II. As original holder, Appellant is statutorily entitled to permit renewal notwithstanding the existence of only one opening for a Class D-5 permit in Boardman Township.
Because appellant requested a new permit, not renewal of an existing permit, and because appellant failed to meet the statutory requirements that would allow the division to grant appellant's application, we affirm.
 {¶ 2} On February 19, 2002, appellant filed an application with the division seeking a new D-5 liquor permit, as well as a D-6 permit that would allow Sunday sales of alcohol. According to the application, appellant was the owner of real estate on which the premises would be located, a building existed on the premises, and appellant would begin operations approximately January 2003. Following the division's receipt of appellant's application, the division and appellant engaged in a series of communications that led to the division's inability to conduct a final inspection and its decision to deny the requested application.
 {¶ 3} Specifically, in late February 2002 Steven T. Arnold, a division compliance officer, conducted an investigation that revealed the proposed building cite was being used as a medical office. Arnold's report states that appellant informed him the doctors would be relocated and the premises would be remodeled. Later that year, in a letter dated October 11, 2002, the division (1) informed appellant that its application was preventing another applicant from obtaining a permit in Boardman Township, and (2) requested a date when the premises would be available for final inspection. Appellant, *Page 3 
through counsel, responded by letter dated October 24, 2002, estimating the facilities would be complete on or before August 1, 2003.
 {¶ 4} Apparently, hearing nothing by August 1, the division, by letter dated August 14, 2003, again advised appellant it was blocking consideration of another applicant and again requested that appellant submit a date when the premises would be ready for final inspection. Appellant, through counsel, responded by letter of August 29, 2003. The letter requested the time period for final inspection be extended through August 31, 2004, asserting appellant was unable to remove the current tenants from the premises.
 {¶ 5} Responding through a letter dated October 3, 2003, the division reiterated the parts of its previous letter concerning both the other applicant and the division's request for a final inspection date, but in addition requested an additional fee of $ 719 due to a fee increase effective September 26, 2003. The letter further advised that if appellant could not give a definite date regarding a final inspection, it should advise the division about the status of remodeling efforts on the proposed permit premises. Counsel for appellant responded by letter dated October 15, 2003, enclosed a check in the amount of $ 719, and indicated, per the previous correspondence, that "it is anticipated that the facility will be open on or about the 31st day of August 2004."
 {¶ 6} In a letter dated July 30, 2004, the division again requested a date when the premises would be ready for final inspection. As in its prior letter, the division requested that if appellant could not give a definite date, it should forward information on the status of the remodeling and construction for the proposed permit premises. The record contains *Page 4 
no response to that letter. Instead, the division sent another letter dated September 9, 2004. Much like the previous letters, it not only advised appellant it was "blocking the consideration of another applicant from obtaining a permit within Boardman Township" but also requested a date when the premises would be ready for final inspection. Appellant, through counsel, responded in a letter dated September 20, 2004, advising that appellant was in the process of evicting the current occupant of the premises and was requesting an additional five to six months to proceed with the restaurant on the permit premises.
 {¶ 7} The division issued an order, mailed March 25, 2005, denying and rejecting appellant's application for a new D5-6 liquor permit because (1 ) appellant is not the owner and operator of a night club or restaurant at the permit premises, (2) appellant did not have sole and exclusive tenancy rights at the captioned location in order to be the owner and operator of a restaurant or night club and the holder of a D5-6 liquor permit, (3) appellant had not requested and passed a division final inspection that would allow the division to determine whether appellant and the location met all of the requirements for issuance of the permit, and (4) appellant was prohibiting the division from considering the next application for such a permit. Appellant appealed to the commission.
 {¶ 8} Subsequent to the division's March 25, 2005 letter, Arnold revisited the premises on Tuesday, August 16, 2005 and found not only that a doctor's office still occupied the premises, but that no signs of remodeling or construction were evident.
 {¶ 9} Ten days later, Timothy Snyder, a compliance officer for the division, inspected the premises. According to his report, the premises was an ongoing medical *Page 5 
office. Two employees of the business located in the building "indicated having no knowledge of any permit premises operating at this building, indicated that this business had been in this location for several years, and indicated that to their knowledge, this medical practice was not moving any time soon."
 {¶ 10} During the same visit, Snyder went to the Mahoning County Court having jurisdiction over eviction proceedings in Boardman Township. He spoke with the deputy clerk of courts who was unable to locate any eviction actions for the proposed permit premises that either Cafe Napoli or its partners instituted. After further investigation, he was unable to find any recorded leases in the names of anyone connected to appellant, though he learned the premises was called the Boardman Canfield Centre, Inc. On returning to the county court, he was unable to find any eviction actions under that name.
 {¶ 11} On the same day, Snyder spoke with one of Cafe Napoli's partners, Gene Russo, who stated the medical offices had occupied the permit premises without a lease for over five years; Russo confirmed that no legal action was pending. Rather, Russo told Snyder he had just sent a letter advising the occupants to move out. Russo informed Snyder he would meet with the medical practice representatives early in the following week and would apprise Snyder of a firm move out date. According to Russo, if the medical practices would not vacate the premises, he would find another location for the permit premises.
 {¶ 12 Snyder filed a follow-up memorandum indicating that on Friday, September 2, 2005, he received a fax from the same attorney who had been communicating with the division concerning appellant's application. The fax included *Page 6 
letters dated June 29, 2005, July 29, 2005, and August 9, 2005, from the attorney to Joseph D. DiDomenico, D.C. as well as a responsive letter from Dr. DiDomenico. Dr. DiDomenico's letter stated that the practice was currently searching for a new office location, was negotiating with several other property owners in the area, and anticipated vacating the current premises within the next 8 to 12 months.
 {¶ 13} Snyder's memorandum contrasted Dr. DiDomenico's letter with other letters from the attorney. Specifically, Snyder noted that, although no eviction proceeding had been filed, the attorney's letter dated October 24, 2002 stated the premises would be ready on or before August 1, 2003, and an August 29, 2003 letter cited his client's "inability to remove the current tenants." Similarly, Snyder explained that even though no eviction action still had been filed, an October 15, 2003 letter from appellant's counsel advised that Cafe Napoli would be open around August 31, 2004, and a letter dated September 2004 stated "my client is in the process of evicting the current occupant." Snyder further offered that the character of the surrounding area suggested other similar commercial units were available.
 {¶ 14} When the division's order came before the commission on appeal, appellant stipulated to the admission of the division's records, including the inspection documents. The commission took additional evidence and issued an order affirming the division's order dismissing the appeal. Appellant appealed to the common pleas court; the court affirmed the commission's order.
 {¶ 15} Appealing to this court, appellant asserts the commission wrongly refused to renew appellant's D5-6 permit, contending appellant is statutorily entitled to permit *Page 7 
renewal. Appellant's assigned errors, however, do not address the facts in the record. Appellant did not possess a D5-6 permit to be renewed; rather, he was applying for a new D5-6 permit. Accordingly, the assignments of error necessarily are overruled as addressing issues not present on the appeal before us. We nonetheless address the only issue that is appropriately raised on these facts: whether the judgment of the common pleas court is supported by reliable, probative and substantial evidence, and is in accordance with the law.
 {¶ 16} When a common pleas court reviews an order of the administrative agency under R.C. 119.12, the common pleas court must consider the entire record to determine whether the agency's order is supported by reliable, probative and substantial evidence and is in accordance with law. Univ. of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 110-111. The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " Provisions Plus, Inc. v.Ohio Liquor Control Comm., Franklin App. No. 03AP-670, 2004-Ohio-592, at ¶ 7, quoting Lies v. Veterinary Med. Bd. (1981), 2 Ohio App.3d 204. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. Conrad, supra.
 {¶ 17} By contrast, an appellate court's review is more limited.Provisions Plus, citing Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619. The appellate court determines whether the trial court abused its discretion. Id. Absent an abuse of discretion, *Page 8 
the appellate court may not substitute its judgment for that of the administrative agency or the common pleas court. Id. An appellate court, however, has plenary review of purely legal questions. Id. Because this appeal involves both questions of law and fact, the standards of review will be applied accordingly.
 {¶ 18} The evidence amply sustains the common pleas court's judgment concluding that reliable, probative and substantial evidence supports the commission's order. Pursuant to R.C. 4303.18, a D-5 permit "may be issued to the owner or operator" of a licensed retail food establishment or food service operation "that operates as a restaurant or night club for purposes of this chapter" to allow the sale of beer and intoxicating liquor under the conditions set forth in R.C. 4303.18. Pursuant to R.C.4303.182, a D-6 permit allows the permit holder to sell on Sunday, under the applicable conditions, the alcoholic beverages its primary permit allows. Under either permit, appellant was required to be the owner or operator of a licensed retail food establishment or a food service operation licensed under R.C. Chapter 3717. Without question, appellant presented no evidence to meet that condition for obtaining a D5-6 permit. Instead, appellant's argument apparently reduces to a contention that the commission abused its discretion in not allowing appellant additional time to procure possession of the permit premises.
 {¶ 19} The letters appellant through counsel wrote to the division, coupled with the investigations the division's representative conducted, provided a solid basis for the common pleas court's judgment affirming the commission's order. Not only did the process span three years, but the messages received from appellant's counsel were *Page 9 
inconsistent with the facts the division's investigation revealed. While the October 24, 2002 letter from appellant's attorney stated the premises would be ready on or before August 1, 2003, it was not. The August 29, 2003 letter from appellant's attorney cited his client's inability to remove the current tenants, but subsequent investigation indicated both that the tenants had no lease for five prior years and that no eviction proceeding had been filed. The October 15, 2003 letter from appellant's counsel stated Café Napoli would be open on or about August 31, 2004, but investigation even a year later revealed the medical offices still occupied the premises. Finally, a September 20, 2004 letter from appellant's counsel stated that appellant was in the process of evicting the current occupant, but Snyder's later investigation revealed no eviction proceeding had been filed. As a result, the commission had considerable latitude to discount appellant's position, set forth in its final correspondence, that the medical practices would be relocated within 8 to 12 months. Given that evidence, the common pleas court correctly determined that the commission's order is supported by reliable, probative and substantial evidence.
 {¶ 20} Further, the common pleas court's judgment is in accordance with law, as R.C. 4303.18 requires that the permit be issued to the owner or operator of a retail food establishment or food service operation. Similarly, Ohio Adm. Code 4301:1-1-12(A) specifies that the division shall issue no class A, B, C or D permit, except on renewal, until the division has conducted a complete examination, including inspection of the premises, and finds the applicant and location meet all the requirements of the applicable law and rules. Because appellant did not meet the requirements imposed by law and rules that it be the owner or operator of a retail food establishment or food service operation, the *Page 10 
common please court's judgment comports with the law. The common pleas court properly affirmed the commission's order.
 {¶ 21} Having overruled appellant's two assignments of error and concluding the common pleas court did not abuse its discretion in affirming the commission's order, we affirm the judgment of the common pleas court.
 Judgment affirmed. BRYANT, KLATT and FRENCH, JJ., concur. *Page 1